These appeals involve a dispute between the Lawrence County Board of Education ("the Board") and its superintendent over the Board's unilateral dismissal of its former custodian of school funds ("CSF") and its subsequent hiring of another person to fill that same position.
 I.
In setting forth the facts, we are mindful that these appeals are from a summary judgment. Therefore, we must consider the evidence presented to the trial court in a light most favorable to Collins and Stephenson, the nonmoving parties. See, e.g., Fincherv. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991). *Page 195 
In 1975, the Board adopted a series of internal rules that included what is referred to herein as Policy ABB, ¶ 8, which provided that the Board could appoint a person as CSF only upon the recommendation if its superintendent. The record suggests that the Board adhered to this policy for at least 24 years until January 5, 1999, when it voted to remove Marsha Stephenson as CSF effective February 1, 1999, and replace her with Carol Prince, who had never been recommended by the superintendent, Cynthia Collins. The Board took this action after finding what it believed to be irregularities concerning the Board's finances. Even after she was dismissed from her position as CSF, Stephenson continued to receive a salary and benefits in an amount commensurate with her continuing status as a Board employee.
The Board met again on February 1, 1999, and voted to rescind its January 5 appointment of Prince as the new CSF, directing Collins to post a position-vacancy notice, in an apparent effort to comply with § 16-22-15, Ala. Code 1975.[1] Collins steadfastly maintained that Stephenson's removal on January 5 was unlawful and that Stephenson remained the CSF; thus, Collins refused to post a position vacancy as the Board requested. The Board responded to Collins's recalcitrance by declaring an emergency and appointing Prince as the temporary CSF, pursuant to § 16-22-15(d), Ala. Code 1975, pending the hiring of a permanent CSF.
On February 16, 1999, Collins and Stephenson filed separate actions against the Board, each of them alleging that the Board had illegally removed Stephenson from her position under then existing Board policies and Alabama law and that her removal violated Stephenson and Collins's right to due process guaranteed by the United States Constitution. Collins and Stephenson sought (1) an injunction against Stephenson's removal from her CSF position; (2) an injunction against the appointment of a new CSF to replace Stephenson; and (3) a declaratory judgment determining that the Board is bound by its own policies and cannot hire or fire a CSF without the recommendation of the Board's superintendent. The trial court entered a summary judgment relating to the two cases, denying Collins and Stephenson's requests for injunctive and declaratory relief, holding that the Board's unilateral dismissal of Stephenson and its subsequent effort to hire Prince as a replacement were not illegal, and holding that neither Stephenson nor Collins's right to due process was violated under the precise facts of the case. Stephenson and Collins appealed.
We must decide the following questions: (1) Whether §16-8-33 and § 16-13-12, Ala. Code 1975, exclusively govern the procedure for the appointment and dismissal of CSFs serving county school boards; (2) whether the Board's dismissal of Stephenson violated her constitutional right to due process of law under theFourteenth Amendment to the United States Constitution; (3) whether the summary judgment was proper as to Stephenson's claim based on the First Amendment; and (4) whether the trial court erred in entering the summary judgment in favor of the Board before Collins and Stephenson had an adequate opportunity to conduct discovery.
 II.
The first issue, which we have broadly stated, involves four separate contentions *Page 196 
that require us to consider where § 16-8-33 and § 16-13-12 fit in the Legislature's statutory scheme for the administration of public education. First, the appellants argue that the Board is required by §16-9-23, Ala. Code 1975, to obtain the recommendation of its superintendent before it can appoint or dismiss a person serving as its CSF. Second, they argue that the Board is bound to follow its adopted policy — Policy ABB, ¶ 8 — requiring such action, or, alternatively, that the Board is bound by its established custom of obtaining the superintendent's recommendation before making such decisions. Third, the appellants argue that § 16-22-15, Ala. Code 1975, requires that notice be given before a school board can appoint a person as its CSF. Fourth, they assert that §§ 36-26-100 to -108, Ala. Code 1975, referred to as the "Fair Dismissal Act," entitle a person who has been dismissed from her capacity as CSF to a notice informing her of the reason for her dismissal and to a hearing on that reason. Because these arguments are distinct from one another, we will address them separately.
 A.
Regarding the first argument, the appellants urge this Court to construe § 16-8-33 and § 16-13-12 in pari materia with §16-9-23, but we are unable to do so.
We begin our discussion with an examination of §16-8-33,[2] which provides the requirements for the statutorily created position of CSF. This section describes the various duties and responsibilities associated with that position by law, and, importantly, states, "The county board of education shall appoint a custodian of the public school funds of the county, which custodian may be the county treasurer, the secretary to the county superintendent of education or some other qualified person." Section 16-13-12 is the functional counterpart of §16-8-33. It provides for the removal of a CSF, stating, "The custodian of school funds of each local board of education may be removed by the local board of education when, in the opinion of the said local board, the best interests of the public schools may require."
Section 16-9-23, on the other hand, governs, among other things, the hiring and dismissal of "principals, teachers and all other regular employees of the board." It requires that the county superintendent nominate such persons "in writing for appointment by the county board of education" in order for them to be hired, and that the county superintendent recommend such persons for dismissal before their employment can be terminated. In the present case, the appellants argue that a CSF is a "regular employee" and that § 16-9-23, when read in pari materia *Page 197 
with § 16-8-33 and § 16-13-12, requires the superintendent's participation in the hiring and firing of a person serving as CSF for a county school system.
In its cases, this Court has often invoked the doctrine of inpari materia when it has been confronted with related statutory provisions. In doing so, this Court has stated that, when two or more statutes relate to the same person, thing, or common purpose, those statutes should be applied together in order to accomplish the manifest intent of the Legislature's exercise of power. SeeMcDonald's Corp. v. DeVenney, 415 So.2d 1075, 1078 (Ala. 1982);see also Locke v. Wheat, 350 So.2d 451 (Ala. 1977); League ofWomen Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974); andLash v. State, 244 Ala. 48, 14 So.2d 229 (1943).
In this case, we cannot say that § 16-8-33 and § 16-13-12 are sufficiently related to § 16-9-23 as to warrant the application of this doctrine of construction because, clearly, these statutes relate to different classes of employees. We acknowledge that § 16-9-23 ambiguously refers to "regular employees," but we need not strain to determine precisely what the Legislature intended by its inclusion of that term. As this Court has stated above, §16-9-23 applies to "principals, teachers and all other regular employees of the board." As is apparent from a reading of the statutory provision, the Legislature grouped principals, teachers, and regular employees together. Consequently, we apply the principle that "[t]he traditional canon of construction, noscitura sociis, dictates that `"words grouped in a list should be given related meaning."'" Dole v. United Steelworkers of America,494 U.S. 26, 36 (1990) (quoting Massachusetts v. Morash, 490 U.S. 107,114-15 (1989) (quoting Schreiber v. Burlington Northern, Inc.,472 U.S. 1, 8 (1985))). Thus, it appears that the term "other regular employees," at a minimum, refers to employees engaged in the operations of a particular school rather than in the general administration of a school system. Consequently, we do not believe that the Legislature intended for the term "other regular employees" to include CSFs, who serve county boards of education in an administrative capacity as fiscal managers, and whose appointments are regulated specifically by statute.[3]
Therefore, we interpret §§ 16-8-33 and 16-13-12 and § 16-9-23 as governing two different sets of employees, precluding a construction of these statutes in pari materia.
 B.
The appellants alternatively contend, with respect to the hiring of CSFs, *Page 198 
that even if § 16-8-33, by itself, controls the appointments of CSFs, the Board is bound to follow Policy ABB, ¶ 8, a policy adopted by the Board in 1974 requiring that it obtain a recommendation from its superintendent before filling the CSF position. We disagree.
The appellants accurately state that county boards of education are bound to follow their duly adopted policies unless those policies are otherwise amended or repealed. See Belcher v.Jefferson County Bd. of Educ., 474 So.2d 1063, 1068 (Ala. 1985); and Walker County Bd. of Educ. v. Walker County Educ. Ass'n,431 So.2d 948, 954 (Ala. 1983). Such policies, however, cannot be contrary to State law. Walker County Bd. of Educ., 431 So.2d at 954.
As we have stated, § 16-8-33 is a precisely worded statute in which the Legislature has clearly spoken as to how CSFs should be hired. While we acknowledge that § 16-1-30(b) allows a local board of education to establish binding policy for that school system, we note that § 16-8-33 specifically provides for the selection and duties of a CSF for a county school system and confers upon county boards of education the authority to appoint a CSF from a broad group of persons, including "the county treasurer, the secretary to the county superintendent of education or some other qualified person." § 16-8-33, Ala. Code 1975. Thus, under the facts of this case, a latent conflict has appeared between § 16-1-30(b) and § 16-8-33.
Having been confronted with this conflict, we are constrained to resolve the problem in favor of the application of the provisions of § 16-8-33, in accordance with the principle that specific provisions prevail over general provisions. Karrh v.Board of Control of the Employees' Retirement Sys.,679 So.2d 669, 671 (Ala. 1996). In applying this canon of construction, we conclude that the Legislature, by enacting § 16-8-33, intended to confer upon a county school board broad discretion regarding the person it chooses to serve as its CSF. For that reason, we conclude that the Board's adoption, under § 16-1-30(b), of Policy ABB, ¶ 8, which unlawfully constricts the discretion of the Board by allowing the county school superintendent to narrow the field of eligible persons to only those whom he or she recommends, cannot supplement or supplant the provisions of § 16-8-33.[4]
We also conclude that, because of § 16-8-33, the Board's customs and practices involving the appointment of CSFs cannot frustrate the Legislature's will, to the extent that such customs and practices are contrary to the provisions of § 16-8-33.
We recognize that our holding today has the effect of invalidating a policy enacted by a county school board, but we do not view this result as an erosion of our long-standing belief that "the administration of school systems is the responsibility of the county boards of education" and that courts should always indulge a strong presumption in favor of the validity of orders and policies adopted by county school boards. Hargett v. FranklinCounty Bd. of Educ., 374 So.2d 1352, 1354 (Ala. 1979); see also
§§ 16-8-8 and -9, Ala Code 1975. We simply hold that an act of the Legislature prevails over a policy of a school board where a conflict exists, and *Page 199 
that a school board can never have the discretion to promulgate a policy that is contrary to law.
We believe the Board's adoption of Policy ABB, ¶ 8, conflicts with governing State law; therefore, we believe that in promulgating this policy the Board exceeded the scope of its discretion under § 16-1-30(b). For that reason, we hold that the trial court, in entering the summary judgment in favor of the Board, properly determined that the provisions of § 16-8-33
control in this case.
 C.
Third, the appellants contend that the Board's authority to appoint its CSF is restricted by § 16-22-15, Ala. Code 1975, which pertains to the solicitation of applications for vacant personnel positions.
Section 16-22-15(b) requires "[e]ach board of education, through its [superintendent], . . . [to] post a notice of vacancy for each vacant personnel position." See also § 16-22-15(a)(2), Ala. Code 1975. "Personnel positions" include the jobs of all employees or personnel of the board except for those persons covered by the Alabama State Merit System and those persons employed by the Alabama Institute for Deaf and Blind who work for the Alabama Industries for the Blind. § 16-22-15(a)(3), Ala. Code 1975. Thus, by the terms of § 16-22-15, it appears that a board of education must convince its superintendent to post a vacancy for the CSF position before that position can be validly filled.
Such an interpretation, however, conflicts with the broad discretion conferred upon school boards, pursuant to § 16-8-33, to appoint CSFs from a stated list of eligible persons. In comparing § 16-22-15 and § 16-8-33, we find § 16-8-33 more specific than §16-22-15, because its application is narrowly tailored to the area of CSFs for county school boards; therefore, we conclude that it must prevail, in accordance with the previously mentioned canons of statutory construction, see, e.g., Karrh, 679 So.2d at 671, and that, in the Legislature's statutory scheme, § 16-8-33 and §16-13-12 exclusively govern the hiring and firing of CSFs.
 D.
Finally, the appellants argue that Stephenson's dismissal violated her rights under §§ 36-26-100 to -108, Ala. Code 1975, commonly referred to as the "Fair Dismissal Act." They assert that CSFs are included in the class of employees described by §36-26-100, Ala. Code 1975.
Section 36-26-100, which defines the class of employees protected by the Fair Dismissal Act, states, in pertinent part:
 "The term `employees,' as used in this article, is deemed to mean all persons employed by county and city boards of education . . . who are so employed as bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants supervisors [sic] and all other persons not otherwise certified by the state board of education. Only full-time employees who are not otherwise covered by the state merit system, the teacher tenure law, or other state statute at the time this article is adopted are intended to be covered by this article. Full-time employees include . . . (b) . . . employees whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted."
(Emphasis added.) Hence, the Fair Dismissal Act generally applies to full-time nonteachers or other noncertified employees of the school board, Bolton v. Mobile County Bd. of School Comm'rs,514 So.2d 820, *Page 200 
822 (Ala. 1987), and excludes employees covered by statute at the time the Fair Dismissal Act was passed.
We note that the enactment of what is now § 16-13-12[5]
significantly predated the effective date of the Fair Dismissal Act. Compare § 300, School Code 1927, and § 16-13-12, Ala. Code 1975, with § 36-26-100, Ala. Code 1975. Therefore, the position of CSF was clearly covered by a State statute at the time the Fair Dismissal Act was passed; this fact suggests that the Legislature, in expressly defining the term "employees" in § 36-26-100, intended to exclude CSFs from the coverage of the Fair Dismissal Act. For that reason, we conclude that the trial court correctly held that Stephenson's removal from her position as Lawrence County's CSF was not improper under the Act.[6]
 III.
The second issue presented is whether Stephenson was denied her right to procedural due process under the Fourteenth Amendment of the United States Constitution when she was removed from her position as the CSF of Lawrence County. The appellants claim that Stephenson enjoyed a constitutionally protected property interest in her employment, an essential threshold requirement for establishing a claim based on an alleged deprivation of procedural due process. See Board of Regents of State Colleges v. Roth,408 U.S. 564, 569-70 (1972). The appellants' argument, however, is premised on their previous assertion that Stephenson was improperly denied her rights under the Fair Dismissal Act, an argument we rejected in Part II, supra. Consequently, we are left to determine whether Stephenson, as a CSF, had a constitutionally protected property interest in her employment, in the light of §16-13-12, the only statutory provision governing the removal of a CSF.
In Board of Regents of State Colleges v. Roth, supra, the Supreme Court of the United States discussed what constitutes a constitutionally protected property interest:
 "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
 "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or *Page 201 
understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."
408 U.S. at 577.
We cannot conclude that Stephenson had an expectation of continued employment with the Board in her capacity as CSF. We have already held that only § 16-13-12 governs the dismissal of CSFs, and that provision clearly allows a county board of education to remove a person from the position of CSF "when, in the opinion of the said local board, the best interests of the public schools may require." § 16-13-12, Ala. Code 1975. Section16-13-12 suggests that a person serving as CSF serves at the pleasure of the local school board; consequently, such a person cannot have a "legitimate claim of entitlement" to continued employment in that position, and, thus, cannot have a protectible property interest in the position of CSF.[7] For this reason, we conclude that Stephenson's rights to procedural due process under the Fourteenth Amendment were not violated.[8],[9]
 IV.
The third issue we must decide is whether Stephenson produced sufficient evidence tending to suggest that her disagreement with the current Board and her relationship with Collins motivated her removal as the Board's CSF.
The Board initially argues in its brief that Stephenson'sFirst Amendment claim fails because, it says, she "suffered no constitutionally cognizable injury." But we find it unnecessary to address this argument because we conclude that, even if there was a cognizable injury, Stephenson produced no evidence tending to suggest that her removal as CSF was substantially motivated by any constitutionally protected conduct in which she may have engaged.
A plaintiff claiming that his First Amendment right to enjoy freedom of speech was violated must show (1) that the conduct at issue was constitutionally protected and (2) that conduct was a motivating factor leading to the adverse employment action taken against him. See Board of County Comm'rs v. Umbehr, 518 U.S. 668,675 (1996); see also Rogers v. Miller. 57 F.3d 986, *Page 202 
992 (11th Cir. 1995); and McCabe v. Sharrett, 12 F.3d 1558,1562 (11th Cir. 1994). Even if a plaintiff can satisfy this burden by a preponderance of the evidence, the employer may yet escape liability if it shows it would have taken that adverse employment action notwithstanding the plaintiff's constitutionally protected conduct. Umbehr,518 U.S. at 675.
We have examined the evidence presented to the trial judge,[10] and, given that evidence, we conclude that Stephenson's First Amendment claim did not bar a summary judgment in favor of the Board.
 V.
The final issue we must resolve concerns evidence the trial court refused to consider in ruling on the summary-judgment motions. This issue involves two separate questions regarding (1) discovery and (2) submission of affidavits.
Collins argues that the trial court prematurely entered a summary judgment in favor of the Board before discovery had been completed. She asserts that further discovery would have yielded evidence concerning special Board meetings at which the position of CSF had been discussed and evidence as to the Board's reasons for removing Stephenson. Whether such evidence would have been produced is inconsequential, given our holding today that Stephenson's dismissal was proper under the law of Alabama.
Stephenson focuses her argument on whether the trial court improperly considered certain affidavits relating to the appointment and dismissal procedures followed by the Board concerning former CSFs. She argues that these affidavits were not based on the personal knowledge of the affiants and that they contradict the affiants' prior sworn testimony, but she does not specifically explain which portions of these affidavits are problematic. Our review of these arguments relating to the affidavits, however, leads us to conclude that they mostly supplement other evidentiary submissions, including depositions, to which there have been no objections. While we acknowledge that these affidavits allege facts not found in other submissions, we note that our understanding of the facts in this case is not dependent on the affidavits challenged by Stephenson. For that reason, we conclude that the trial court's decision not to strike these affidavits is not a ground for reversal, because we do not believe Stephenson was prejudiced by that decision. See Townsonv. Harvey Implement Co., 51 Ala. App. 238, 241, 284 So.2d 267,269 (1973) (stating that the Court of Civil Appeals would not consider questions relating to the trial court's consideration of certain evidentiary submissions where those questions were irrelevant to the court's conclusions); see also Rule 45, Ala.R.App.P.
1990468 — AFFIRMED.
1990469 — AFFIRMED.
Hooper, C.J., and Houston, See, Lyons, and Brown, JJ., concur.
Cook and England, JJ., concur in the result.
Johnstone, J., dissents.
[1] Section 16-22-15(b), Ala. Code 1975, provides, in the case of a vacancy in a personnel position, that a board of education must post a notice of the vacancy and the conditions for applying to fill that vacancy, "in a conspicuous place at each school campus and worksite at least 14 days before the position is to be filled."
[2] Section 16-8-33, Ala. Code 1975, reads:
 "The county board of education shall appoint a custodian of the public school funds of the county, which custodian may be the county treasurer, the secretary to the county superintendent of education or some other qualified person. The custodian of school funds shall give bond with a surety company authorized to do business in Alabama, shall receive and take charge of all moneys to which the county board of education may be entitled by law or which may come into its possession for public school purposes, shall pay out such moneys only on written order of the county superintendent of education, approved by the chairman of the county board of education, shall keep an accurate record of all receipts and expenditures and shall make such reports as may be required by law, by the county board of education or by rules and regulations of the State Board of Education. The amount of the bond of the custodian shall be fixed by the county board of education and approved by the State Board of Education through its executive officer, the State Superintendent of Education, with whom a certified copy shall be filed."
[3] Our statements regarding the scope of § 16-9-23 should not be understood to mean that other classes of employees can be hired or dismissed without the recommendation of the county superintendent. There are instances in the Code where the Legislature has specifically stated that certain groups of employees must have the superintendent's recommendation before an employment decision regarding those persons can be made. See §16-9-24, Ala. Code 1975 (regarding the hiring of supervisors and clerical assistants); and § 16-8-32, Ala. Code 1975 (regarding the appointment of census enumerators). We also note that there are instances where the Legislature has remained silent with respect to certain classes. In these situations, the policy of the local school system may control employment matters by virtue of §16-1-30(b), Ala. Code 1975, which allows local school systems to establish rules and regulations regarding their conduct and management. Such policies and rules can conceivably pertain to the hiring and firing of any class of employees as long as these promulgations are not contrary to law. See Part II. B., infra.
[4] The appellants rely on Belcher v. Jefferson County Board ofEducation, 474 So.2d 1063 (Ala. 1985), and Walker County Board ofEducation v. Walker County Education Ass'n, 431 So.2d 948 (Ala. 1983), for their contention that the Board in this case is bound to follow Policy ABB, ¶ 8. We find that reliance, however, to be misplaced because our decision in those cases was not based on the legality of the substance of the policies referred to therein.See generally Belcher, supra, and Walker County Bd. of Educ., supra.
[5] As we have already stated, the Legislature's mandate for the hiring and firing of CSFs is specifically set forth in § 16-8-33
and § 16-13-12, although, for purposes of our current discussion, only § 16-13-12 concerns us, because it establishes the sole legal method of removal.
[6] The portion of the Fair Dismissal Act that generally affords nonteachers and noncertified employees procedural protections is found in § 36-26-103. This section states:
 "The employing board of education shall give notice in writing to the employee, stating in detail the reasons for the proposed termination, the facts upon which such reasons are based, and giving notice of the employee's rights to a hearing as set out herein. Said action of giving notice of termination shall be made only upon recommendation of the superintendent and upon approval of a majority of the members of the employing board which action shall be reflected in the board minutes."
[7] We note that Stephenson's employment with the Board, in a general sense, was not terminated. Rather, the Board simply divested her of her responsibilities as its CSF. The record suggests that Stephenson remains employed with the Board in an unmentioned capacity.
[8] While issues of procedural due process in the area of public education often surface in regard to tenure, tenure is not always a requirement for a person to have a property interest in this field. The Court of Civil Appeals held in Sharpton v. WinstonCounty Board of Education, 450 So.2d 124 (Ala.Civ.App. 1984), that a person has a property interest in his or her continued employment even where that person's position was not protected by the Teacher Tenure Act (as is the case here). Sharpton, 450 So.2d at 126. In Sharpton, however, the board of education had recorded in its minutes its decision to hire the plaintiff for an additional year in his nontenured capacity. Although the board of education had not extended a formal contract to the plaintiff, the Court of Civil Appeals held that the resolution of the board to hire the plaintiff created a legitimate expectation of continued employment for the term specified by the board in its minutes.Id. That situation, however, does not exist in the present case, where, by statute, the Board is powerless to promise to persons appointed as CSF any definite term of employment.
[9] Because we conclude that the action taken by the Board in removing Stephenson as its CSF did not affect a constitutionally protectible property interest, we choose not to address the question whether only Stephenson had standing to assert this claim.
[10] Collins argues that one of the Board members disliked Collins, and that Collins's good relationship with Stephenson motivated her removal as CSF. She also argued that this same board member preferred Prince's personality over Collins's, and that this, too, led to the Board's decision. But there was testimony indicating that the Board's reason for removing Stephenson was related to the discovery of a discrepancy in the Board's financial records. *Page 203