[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1153 
 On Application for Rehearing
The opinion of September 20, 2002, is withdrawn and the following is substituted therefor.
Dr. Earnest Davis filed a complaint against J.F. Drake State Technical College (hereinafter "Drake State") and Dr. Helen McAlpine, in her official capacity as president of Drake State. In his complaint, Davis sought declaratory and injunctive relief and alleged a claim of breach of contract related to Drake State's termination of his employment. Davis contended that he had attained nonprobationary status under the Fair Dismissal Act, § 36-26-100 et. seq., Ala. Code 1975 (hereinafter "the FDA"), and that he was entitled to notice and a hearing under the FDA. Drake State and McAlpine (hereinafter together referred to as "the defendants") answered and denied liability. The defendants moved for a summary judgment on all of Davis's claims against them. Davis moved for a partial summary judgment. On February 15, 2002, the trial court entered a summary judgment in favor of the defendants. Davis filed a postjudgment motion; the trial court denied the motion. Davis appealed, and the supreme court transferred the case to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
The record indicates that in early 1998, Dr. Johnnie Harris, a former president of Drake State, hired Davis to fill the position of "business manager" for Drake State. Davis began working for Drake State on February 2, 1998; he worked from that date until August 31, 1998, without a written employment contract. On July 15, 1998, Davis's job performance was evaluated in writing; the record does not contain that evaluation, nor does it indicate who performed the evaluation.
Davis entered into a written employment contract with Drake State for the period September 1, 1998, through August 31, 1999. Davis later entered into two additional written employment contracts for the periods September 1, 1999, through August 31, 2000, and September 1, 2000, through August 31, 2001.
Dr. Helen T. McAlpine became the president of Drake State on November 3, 2000. On January 18, 2001, McAlpine sent Davis a letter that stated:
 "This is to notify you that your employment with J.F. Drake State Technical College will not be continued beyond the end of your current contract. Thus, your contract will not be renewed, and your official last day of employment at J.F. Drake State Technical College will be August 31, 2001. Please let me know if you have any questions about this matter."
On July 9, 2001, attorneys for Davis wrote a letter to McAlpine in which they contended that, as of February 2, 2001, Davis had attained nonprobationary status under the FDA. The attorneys asserted that if Drake State wanted to terminate Davis's employment, Davis was entitled to notice and a hearing under the FDA. Legal counsel for Drake State responded by letter, stating that Davis had not attained nonprobationary status because Drake State had notified Davis of the termination of his contract before he had been employed at Drake State for the three years required to attain nonprobationary status *Page 1154 
under the FDA. See § 36-26-101(a), Ala. Code 1975. In the trial court, Drake State moved for a summary judgment, arguing that Davis had not attained nonprobationary status and, therefore, that he was not entitled to notice and a hearing under the FDA before it could terminate his employment. The trial court granted Drake State's motion for a summary judgment.
On appeal, Davis once again argues that he attained nonprobationary status under the FDA, and, therefore, that Drake State could not terminate his employment without affording him notice and a hearing. The parties agree that Davis is an "employee" as that term is defined in the FDA. See § 36-26-100, Ala. Code 1975. The conditions regarding the probationary period applicable to employees covered under the FDA is set forth as follows:
 "(a) All employees as defined in Section 36-26-100
shall be deemed employed on a probationary status for a period not to exceed three years from the date of his or her initial employment, or a lesser period which may be fixed by the employing authority.
 "(b) During said probationary period, the employing authority shall cause the employee's performance to be evaluated.
 "(c) At any time during the employee's probationary period, the employing authority may remove an employee by furnishing said employee written notification at least 15 days prior to the effective day of termination."
§ 36-26-101, Ala. Code 1975.
Thus, an employee attains nonprobationary status for the purposes of the FDA if the employee works for the employer for three years. Under the FDA, a nonprobationary employee "has a property interest in continued employment and may not be terminated except for cause." Hardy v.Birmingham Bd. of Educ., 601 So.2d 87, 92 (Ala.Civ.App. 1991), overruledon other grounds, 601 So.2d 93 (Ala. 1992). However, a probationary employee, one who has not worked for the employer for at least three years, has no property interest in his or her employment and may be terminated at will on 15 days' notice. Gainous v. Tibbets, 672 So.2d 800
(Ala.Civ.App. 1995).
Davis acknowledges that he received notice of the termination of his employment before the expiration of his three-year probationary period. He contends, however, that because he worked for Drake State from February 2, 1998, through August 31, 2001, he actually attained nonprobationary status because he had been employed for a greater length of time than the three years required to attain nonprobationary status.See § 36-26-101(a), Ala. Code 1975.
In Saulsberry v. Wilcox County Board of Education, 641 So.2d 283
(Ala.Civ.App. 1993), this court considered a case with facts similar to those presented in this case. In Saulsberry, Saulsberry was employed as a maintenance cosupervisor by the Wilcox County Board of Education ("the Board"). Before the expiration of Saulsberry's three-year probationary period, the Board notified Saulsberry of its intent to terminate his employment. However, the effective date of that termination was 25 days after the expiration of Saulsberry's three-year probationary period. The trial court rejected Saulsberry's argument that because he worked for 25 days past the third anniversary of his employment with the Board, he automatically became a nonprobationary employee who could be terminated only if the Board followed the notice and hearing requirements set forth in the FDA. This court affirmed the trial court's judgment, stating:
 "Our adoption of Saulsberry's interpretation of the [FDA] would result in a *Page 1155 
requirement that the effective day of termination of employment of a probationary employee must occur before the third anniversary of his or her employment.
 "In addressing this interpretation, the trial court's order stated:
 "`There is no dispute that [Saulsberry] was covered by the [FDA] nor is there any dispute that the [Board] terminated his employment and sent him notice of that termination prior to the expiration of three years. [Saulsberry] claims, because he was allowed to work for a longer period than three years, he became a non-probationary employee and could only have been terminated for cause as set forth in section 36-26-102[, Ala. Code 1975]. Giving a literal interpretation to section 36-26-102, the Court finds that [Saulsberry's] employment was terminated while he was a probationary employee and thus his employment was properly terminated without giving cause. The language clearly says "at any time during the employee's probationary period" he may be removed upon written notification. It also says he must be given at least fifteen (15) days' notice prior to the effective date of termination. Under this provision [Saulsberry] could have been terminated at any time through June 5, 1989 [(the day before the third anniversary of Saulsberry's June 6, 1986, date of initial employment with the Board)]. However, if he had been terminated on June 5, 1989, he would have been entitled to work until June 20, 1989, because the notification must come at least 15 days' prior to the effective date. Since the [Board] gave [Saulsberry] notice prior to the expiration of his probationary period his employment was properly terminated and the fact that the [Board] allowed [Saulsberry] to work for a longer period than 15 days after the date of the notice of termination does not make him a non-probationary employee.'
 "The requirement sought to be imposed by Saulsberry's interpretation is not reasonable, nor is it consistent with the principles of statutory construction and the prior opinions of this court and our Supreme Court when construing the [FDA]. The overall purpose of the [FDA] `is to provide non-teacher employees a fair and swift resolution of proposed employment terminations.' Bolton v. Board of School Commissioners of Mobile County, 514 So.2d 820, 824 (Ala. 1987). Further, the [FDA] should be liberally construed to effectuate its purpose. See Bolton, supra. We cannot, however, add provisions to the [FDA] which the legislature chose not to include."
641 So.2d at 285-86.
Davis urges this court to overrule Saulsberry, supra. However, we have considered the holding in that case, and we continue to agree with our original analysis. "If the legislature had intended that the effective day of employment termination must occur before the third anniversary of one's employment, it would have so stated." Saulsberry,641 So.2d at 286. Given the authority of Saulsberry, we must conclude that Davis has failed to demonstrate that the trial court erred in entering a summary judgment for Drake State on his claim that he had attained nonprobationary status and that he was therefore entitled to notice and a hearing under the FDA.
Davis also argues that, even assuming that he was a probationary employee, he was entitled to notice and a hearing under Drake State's own policy manual. *Page 1156 
We note that Davis raised this issue for the first time — and then only briefly — in his reply brief to Drake State's opposition to his motion for a partial summary judgment. Only a portion of Drake State's policy manual is contained in the record on appeal. That portion of the policy manual sets forth a provision substantially similar to the State Board of Education's Revised Hearing Procedure Policy No. 619.01. The policy manual provides, in pertinent part:
 "If a probationary employee under contract is terminated within the period of a contract, the employee is entitled to be given cause and the opportunity for a hearing under these hearing procedures adopted by the State Board of Education. . . ."
(Emphasis added.)
McAlpine testified that the above-quoted portion of the policy manual means that if the probationary employee receives notice of his termination before the expiration of his three-year probationary period but is allowed to complete his employment under his written employment contract, he is not actually terminated "within the period" of the contract. Thus, under that interpretation, a probationary employee is not entitled to notice and a hearing under Drake State's policy unless that probationary employee receives notice of his termination and is required to leave his employment before the expiration of his contract. McAlpine testified that, under the Drake State Policy, a probationary employee who receives notice of his termination but is allowed to complete his employment contract would not be entitled to notice and a hearing.
McAlpine based her interpretation of the policy manual on Chancellor Fred Gainous's interpretation of the policy manual, which is set forth in a memorandum contained in the manual. As Chancellor, Dr. Gainous has the authority to "[i]nterpret the rules and regulations of the [State Board of Education] concerning the junior colleges and trade schools." § 16-60-111.5(2), Ala. Code 1975. Dr. Gainous's memorandum, entitled "Employees' Probationary Interpretation," provides:
 "Pursuant to my authority as Chancellor under Section 16-60-111.5 of the Code of Alabama (1975), as amended, I am issuing to you an official interpretation of State Board of Education Policy Number 619.01 Revised Hearing Procedure. Section 1.12 of the policy defines an employee of a community, junior or technical college to be any full-time employee on Salary Schedules B, C, D, or E. Section 3.1 of the policy addresses the probationary period of employment for such employees. At 3.11, it defines the probationary period as three years from the date of initial employment. It states at 3.13:
 "`With respect to any full-time employee under contract, at any time during such employee's probationary period, the employing authority may remove an employee by furnishing said employee written notification at lest fifteen (15) calendar days prior to the effective date of termination.'
 "The policy language cited above clearly states that an employee covered by this policy may be terminated at any time during the probationary period upon written notification. It further clearly states that the employee must be given at least fifteen (15) days' notice prior to the effective date of termination. So long as the non-renewal or termination notice is rendered within the probationary period, the termination can be without cause. Termination without cause means that the employee is not entitled to be given a reason for the termination or a due process hearing. *Page 1157 
 "Thus, without cause, any college employee covered by this policy and who is under a contract for a third year can be notified any time at least fifteen (15) days prior to the end of the employee's third year's contract that the contract will not be renewed and that employment will cease as of the end of the business day on the final date of the contract. Further, without cause, any college employee covered by this policy and who is under an open-ended letter of appointment can be notified at any time within the three-year probationary period (even the next-to-the-last day of the three-year probationary period) that employment will be discontinued fifteen (15) days (or more, if desired by the president) from the date of the notice of termination. Even if the fifteen-day notice period causes the employment to go beyond the three-year probation[ary] period, the employment can still be terminated without cause, so long as the written notice is served within the probationary period."
We conclude that Dr. Gainous's interpretation of the policy with regard to the issue presented in this case is consistent with both the language of the policy and with the holding of Saulsberry v. Wilcox County Boardof Education, supra. Further, courts must give deference to an agency's interpretation of its own rules and regulations if that interpretation is reasonable and not plainly erroneous. Ex parte Board of School Comm'rs ofMobile County, 824 So.2d 759, 761 (Ala. 2001). We cannot say that Davis has established that Drake State's interpretation and application of its own policy governing the termination of probationary employees was plainly erroneous or that he was entitled, under that policy, to notice and a due-process hearing.
We also note that in his brief on appeal, as well as in his reply brief to Drake State's opposition to his summary-judgment motion submitted to the trial court, Davis made a one-sentence statement to the effect that "there is no question" that the Due Process Clause of the United States Constitution required that Drake State afford him notice and a hearing. Our supreme court has held that an argument was raised for the first time on appeal and therefore not reviewable where the appellant had made only a one-sentence assertion before the trial court on the same issue it sought to raise in the appellate court. TFT, Inc. v. Warning Sys., Inc.,751 So.2d 1238 (Ala. 1999); Knight v. Alabama Power Co., 580 So.2d 576
(Ala. 1991). Davis's one-sentence due-process "argument" before the trial court cannot be said to have raised the issue before that court, and this court may not consider it for the first time on appeal. TFT, Inc. v.Warning Sys., Inc., supra; Knight v. Alabama Power Co.; supra. See alsoAbbott v. Hurst, 643 So.2d 589 (Ala. 1994); Andrews v. Merritt Oil Co.,612 So.2d 409 (Ala. 1992).
Davis's last argument is that Drake State could not terminate his employment because, he argues, it had failed to evaluate his employment, and its failure to evaluate him constituted a breach of his employment contract. The FDA provides that during an employee's probationary period, "the employing authority shall cause the employee's performance to be evaluated." § 36-26-101(b), Ala. Code 1975. McAlpine presented evidence indicating that she had addressed some concerns about Davis's work performance in several memoranda addressed to Davis. For the purposes of this opinion, we find it unnecessary to decide whether those memoranda constitute the evaluations contemplated by § 36-26-101(b), because in making his *Page 1158 
argument on this issue, Davis concedes that he received at least one written evaluation during his employment at Drake State. Nothing in the FDA requires that a probationary employee be evaluated more than once during the probationary period. Davis contends, asserting several policy arguments, that this court should require that an employer subject to the FDA conduct more than one evaluation during an employee's probationary period. However, it is the function of the Legislature, not this court, to modify the FDA if it so chooses. See Simcala, Inc. v. American CoalTrade, Inc., 821 So.2d 197, 203 (Ala. 2001) ("the function of this Court is `"to say what the law is, not what it should be."'" (citations omitted)).
Further, in support of his argument that under its own policies, Drake State was required to evaluate him annually, Davis quotes a portion of Drake State's faculty and staff handbook. With regard to the evaluation of faculty and staff, the handbook states:
 "The President is responsible for the development and implementation of an evaluation system whereby all instructors and other employees at the institution are evaluated at least annually. Individual written evaluation records are maintained for all employees."
In arguing that the above-quoted language constitutes a contract requiring Drake State to perform annual evaluations of its faculty and staff, Davis cites only Belcher v. Jefferson County Board of Education,474 So.2d 1063 (Ala. 1985).
In Belcher, two nontenured teachers contended that the county board of education had failed to evaluate them as required by the evaluation policy it had adopted. In that case, the board had adopted a specific written policy governing the evaluations of teachers. 474 So.2d at 1066. The teachers asserted breach-of-contract claims based on the board's failure to follow its evaluation policy. The trial court dismissed the teachers' breach-of-contract claims, concluding that the teachers had failed to state a claim upon which relief could be granted. See Rule 12(b)(6), Ala.R.Civ.P. Our supreme court reversed the dismissal of the teachers' breach-of-contract claims, holding that "the Board of Education did not legally have to follow any particular evaluation policy absent its own self-imposed procedures. Having adopted a policy, however, the Board is bound to follow it." Belcher, 474 So.2d at 1068.
The "adoption of policies and procedures known to and relied upon by an employee may, under appropriate facts, give rise to implied contractual terms of employment." McCord-Baugh v. Birmingham City Bd. of Educ., [Ms. 2991398, Feb. 15, 2002] ___ So.2d ___, ___ (Ala.Civ.App. 2002) (citingHoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala. 1987); Kohen v.Board of School Comm'rs of Mobile County, 510 So.2d 216 (Ala. 1987); andBelcher v. Jefferson County Bd. of Educ., supra). Davis contends that in this case, as in Belcher, Drake State "adopted an evaluation policy" that would create an obligation on the part of Drake State to perform annual evaluations of his work performance. However, after careful consideration, we must agree with Drake State's argument that the handbook language requiring McAlpine, as the president of Drake State, to develop and implement an evaluation process merely defined one of the McAlpine's duties as the president of Drake State. That handbook language does not set forth the specifics by which any such evaluation process would be conducted. We cannot agree that the above-quoted language from the faculty and staff handbook constitutes evidence indicating that Drake State had formulated *Page 1159 
and adopted its own policies and procedures for the evaluation of its faculty and staff. See Belcher, 474 So.2d at 1068. Therefore, Davis has not established the existence of any policy that required his work performance to be evaluated on an annual basis as a prerequisite for Drake State's authority to terminate his employment as a probationary employee.
OPINION OF SEPTEMBER 20, 2002, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
Yates, P.J., and Pittman, J., concur.