THOMAS, Judge.
 

 Mary Simmons, Dytisha Goodgame, and Sheila Whetstone-Tuck (“the employees”) sued the Coosa County Board of Education (“the Board”) and Board Superintendent Todd Wingard, alleging breach-of-contract claims and claims arising under the Fair Dismissal Act, § 36-26-100 et seq., Ala.Code 1975 (“FDA”).
 

 The parties stipulated to the following facts:
 

 “1. [The employees] are nonproba-tionary aides employed by the Board.
 

 “2. As nonprobationary aides, they are entitled to the procedural safeguards set forth in the Alabama Fair Dismissal Act, Ala.Code [1975,] § 36-26-102 and § 36-26-103.
 

 “3. [The employees] and [the Board and Wingard] stipulate and agree that [the employees] are .employed by the Board pursuant to a base contract which entitles them to a 30-hour work week (six hours per day, five days a week).
 

 “4. Prior to the start of the 1997-1998 school year, [the Board] asked and [the employees] agreed to work supplemental hours above and beyond their base contract term of 30 hours per week.
 

 “5. In September of 1997, each [employee] signed a Temporary Work Contract in which they agreed to work ‘... 2 extra hours per day at my regular rate of pay.’
 

 “6. From the 1997-1998 school year until the 2002-2003 school year, each [employee] continued to work two addi
 
 *1233
 
 tional hours each day above and beyond their base term of employment:
 
 [1]
 
 stated otherwise, [the employees] worked a 40-hour week (30 hours base contract week; 10 hours temporary work week) for each of the following school years:
 

 “(a) 1997-1998
 

 “(b) 1998-1999
 

 “(c) 1999-2000
 

 “(d) 2000-2001
 

 “(e) 2001-2002
 

 “7. In September of the 2002-2003 school year, the Board cancelled the temporary employment contract of each of the three [employees]. By this action, the number of hours each [employee] worked each week went from 40 hours a week (30 base; 10 temporary) to 30 hours a week.
 

 “8. The Board unilaterally cancelled the temporary work contract of the [employees] without a hearing.
 

 “9. [The employees] contend that the reduction in weekly hours of work from 40 hours to 30 hours constitutes a partial cancellation of their employment contracts.
 

 “10. [The employees] contend that the Alabama Fair Dismissal Act, specifically Ala.Code [1975,] § 36-26-102, entitles them to a hearing before the Board can reduce their work hours.
 

 “11. [The employees] requested a hearing before the Board to challenge the reduction in work hours, but the Board denied the request.
 

 “12. [The employees] contend that the action of the Board to reduce their weekly hours of work from 40 hours to 30 hours violated the Alabama Fair Dismissal Act in that the Board did not comply with the procedural requirements of the Act by holding a hearing before taking such action.
 

 “13. [The Board and Wingard] contend that the [employees] are bound by the terms of the temporary work contract, signed by each [employee]. The temporary work contract states:
 

 “ T ... (name) agree to work 2 extra hours per day at my regular rate of pay.
 

 “T understand that this is a temporary agreement which will last only as long as the extra work time is needed by the school system and that the extra hours are nontenurable.
 

 “ T understand that my regular pay and tenure are based on my regular aide position.’
 

 “Each [employee] signed a temporary work contract.
 

 “14. [The employees] contend they are entitled to be made whole for all [pay] they would have earned if the temporary work contract had not been unilaterally cancelled in September of 2002.
 

 “15. [The Board and Wingard] dispute this contention. [The Board and Wingard] maintain that these employees were hired by the Board as 30-hour a week aides. It is this base employment position which entitled [the employees] to procedural rights under the Fair Dismissal Act. This base contract has not been changed.
 

 “16. The parties stipulate that, in the event the Court determines that the Board should have provided a hearing to each of the [employees] before reducing their weekly hours of work from 40 hours per week to 30 hours per week, the action of the Board was based upon
 
 *1234
 
 mistake of law and fact and did not constitute an intentional violation of law.
 

 “17. The [employees] agree to stipulate to the factual assertions set forth in the affidavit of Todd Wingard, but the [employees] do not stipulate to any statements of argument or conclusions of law set forth in the affidavit.
 

 Superintendent Wingard’s affidavit contains the following factual assertions:
 

 “These three employees were employed by the Board as 30-hour per week aides. They have never been approved by the Board as 40-hour week employees.
 

 “[The employees] worked as special education aides. As special education aides, they would attend to and assist students with disabilities. Students with disabilities must be assisted or accommodated to make sure they receive an appropriate education notwithstanding their handicap. The needs of handicapped children vary from time to time.
 

 “For example, a child with orthopedic problems may need help one week or month on the school bus, but not the next week or month. The child may become self-reliant and no longer need the aide. Or the child may become too sick to come to school or otherwise drop out of school, thereby eliminating the need for an aide.
 

 “In short, the needs and requirements of the special education children change from time to time.
 

 “Recognizing these changing circumstances, it made sense to the Board to see if existing aides would like additional work to cover the special needs of handicapped students before and after school rather than hire a full-time employee.
 

 “As I stated before, our aides work 30 hours a week. Their salaries for this work have generally been less than a thousand dollars a month for the nine months of the school year. The aides often need and want additional work.
 

 “Given the [employees] desired to earn more money than their base pay, and the Board’s interest to meet the changing needs of its special education students without hiring additional full-time aides, the employees and the administrators worked out an arrangement to best serve the needs of both.
 

 “The school district asked if the [employees] were willing to work, on a temporary basis, up to two hours a day or ten hours extra a
 
 week
 
 — on
 
 an as-needed basis.
 
 The [employees] stated they were willing to do so.
 

 “To make sure it would be legal to enter a separate contract with the employees to work on a temporary basis to meet the changing needs of the special education students, the Superintendent and the Special Education Coordinator asked the UniServ Director of AEA [the Alabama Education Association] to verify that the Board could use employees for the extra work without affecting their tenured contract. The Superintendent and the AEA UniServ Director worked together to develop the temporary work contract, which each of the [employees] signed. The Board approved the recommendation to give the Superintendent of Education authority to determine assignments for the extra work.
 

 
 *1235
 
 [[Image here]]
 

 “[T]he voters of Coosa County rejected a proposed tax increase. This left the Board in desperate financial condition.
 

 “To address this crisis, I, as Superintendent, had the responsibility to cut costs wherever I could.
 

 [[Image here]]
 

 “I determined that we did not need to use [the employees] for this work. I determined that we could make scheduling adjustments so this ‘extra work’ would not be necessary or required.
 

 “Now [the employees] want three years of pay for work they did not do; and want us to go through an expensive hearing to show what everybody knows — the Coosa County Board is in a financial crisis.”
 

 The parties filed cross-motions for a summary judgment and briefs in support of their positions. On July 24, 2008, the trial court entered the following judgment, after which the employees timely appealed to this court:
 

 “After a consideration of the Stipulation of Facts, briefs of the parties, applicable case law and Alabama’s Fair Dismissal Act, the Court finds that [the Board and Wingard are] entitled to judgment as a matter of law. This is primarily due to the fact that the [employees] entered into separate temporary agreements each year, which clearly state that the agreements were ‘temporary’ and that pay and tenure were based on the ‘regular six-hour position.’ These agreements were approved by an AEA representative. [The employees] also entered into separate general aide agreements each year as well. As such, the Board’s failure to renew these contracts does not appear to violate any provision of the Fair Dismissal Act.
 

 “Accordingly, Judgment is hereby entered in favor of [the Board and Win-gard] and against the [employees].”
 

 Standard of Review
 

 Because this appeal comes to us on stipulated facts and the trial court’s ruling on cross-motions for a summary judgment, our review is de novo.
 
 See Provident Life & Cas. Co. v. Crean,
 
 804 So.2d 236 (Ala.Civ.App.2001).
 

 “The trial court was not presented with any disputed facts, nor was there any oral testimony taken. It is well settled that ‘[w]here the evidence before the trial court is undisputed, ... the appellate court shall sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to' the facts.’
 
 Justice v. Arab Lumber & Supply, Inc.,
 
 533 So.2d 538, 542 ([Ala.] 1988), citing
 
 Abel v. Forrest Realty, Inc.,
 
 484 So.2d 1069 (Ala.1986);
 
 Stinson v. Stinson,
 
 494 So.2d 435 (Ala.Civ.App.1986);
 
 Stiles v. Brown,
 
 380 So.2d 792 (Ala.1980). Because we construe the trial court’s judgment not as a summary judgment, but rather as a judgment on stipulated facts, we review this case using the de novo standard.”
 

 Crean,
 
 804 So.2d at 238.
 

 The FDA Claim
 

 The FDA entitles nonprobationary employees of school systems and other enti
 
 *1236
 
 ties
 
 [1]
 
 to certain due-process rights before their employment is terminated, including 15 days’ notice of termination,
 
 see
 
 § 36-26-101, Ala.Code 1975, and the right to a hearing if the employee wishes to contest the termination,
 
 see
 
 § 36-26-103 and -104, Ala.Code 1975. A nonprobationary employee is one who has been employed by the employer for three years or more.
 
 See
 
 § 36-26-101, Ala. Code 1975. The FDA applies only to full-time employees, i.e., those “whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted.” § 36-26-100, Ala.Code 1975.
 

 Citing
 
 Ex parte Green,
 
 689 So.2d 838 (Ala.1996);
 
 Ledbetter v. Jackson County Board of Education,
 
 508 So.2d 244 (Ala.1987); and
 
 Carter v. Baldwin County Board of Education,
 
 532 So.2d 1017 (Ala.Civ.App.1988), the employees contend that the Board’s reduction of their work hours constituted a “partial termination” of their employment, thereby triggering the protections of the FDA. Specifically, the employees assert that they were entitled to a hearing before the Board reduced their hours.
 

 Ledbetter
 
 is the seminal case holding that partial termination of employment triggers the right to a hearing under the FDA. In
 
 Ledbetter,
 
 the school board reduced the regular working hours of three nonprobationary lunchroom workers from 35 to 30 hours per week due to decreased enrollment at an elementary school. The employees requested a hearing under the FDA, and the school board filed a declaratory-judgment action, seeking a ruling that the board had neither “terminated” the employees within the meaning of § 36-26-103, Ala.Code 1975, nor “transferred” them within the meaning of § 36-26-105, Ala.Code 1975 — the only adverse employment actions specifically mentioned in the FDA that trigger the right to a hearing. The circuit court entered a declaratory judgment for the school board.
 

 On appeal to the Alabama Supreme Court, the employees in
 
 Ledbetter
 
 argued that the court should construe the provisions of the FDA dealing with “termination”
 
 in pan materia
 
 with § 16-24-3, Ala.Code 1975, a part of the Teacher Tenure Act (“TTA”), § 16-24-1 et seq., Ala. Code 1975, which provides, in pertinent part:
 

 “The contract of employment of any teacher who shall attain continuing service status shall remain in full force and effect unless
 
 superseded by a new contract signed by both parties, or cancelled
 
 as provided in Section 16-24-9 or 16-24-10 [establishing procedural protections that must precede cancellation].”
 

 (Emphasis added.) Relying on its earlier decision in
 
 Ex parte Wright,
 
 443 So.2d 40 (Ala.1983), the supreme court analyzed the case as an invalid “partial termination” of the lunchroom workers’ employment. 508 So.2d at 245. The
 
 Ledbetter
 
 court stated:
 

 
 *1237
 
 “In
 
 Wright,
 
 this Court addressed the issue of whether certain tenured teachers’ contracts had been improperly can-celled by the school board. This Court held that a new contract, which changed the number of months that the teachers were to work from ten to nine was a ‘partial cancellation’ of the old contract, and as such could not be enforced without compliance with the procedures set out in § 16-24-9 of the Teacher Tenure Act.”
 

 Id. See Wright,
 
 443 So.2d at 42 (stating that “[t]here can be no question that there was a partial cancellation, since the teachers’ old contract, providing that they would work ten months at a certain annual salary, was replaced by a new contract that provided they would work only nine months at a commensurately reduced annual salary”).
 

 In
 
 Ledbetter,
 
 the supreme court discussed the fact that the trial court had rejected the employees’ invitation to construe the FDA
 
 in pari materia
 
 with the TTA because, the trial court had reasoned, there was a “material distinction” between the FDA and the TTA. Commenting on that reasoning, the supreme court stated:
 

 “Although a narrow reading of § 36-26-102, § 16-24-3, and
 
 Wright, supra,
 
 leaves room for the trial court’s distinction between the Fair Dismissal Act and the Teacher Tenure Act, the relevant principles of due process under the Fourteenth Amendment lead us to the conclusion that Mrs. Ledbetter has been deprived of her property interest in her employment without due process of law.”
 

 Ledbetter,
 
 508 So.2d at 245-46. The court decided that, notwithstanding an arguable distinction between the FDA and the TTA, the trial court had erred by failing to acknowledge that the employees had a “ ‘legitimate claim of entitlement’ ” to, and therefore a “property interest” in, continued employment that made the school board’s reduction of their working hours without a hearing a denial of due process. 508 So.2d at 246 (quoting
 
 Board of Regents v. Roth,
 
 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and citing
 
 Perry v. Sindermann,
 
 408 U.S. 593, 602-03, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).
 
 See also Stallworth v. City of Evergreen,
 
 680 So.2d 229, 233 (Ala.1996) (stating that
 
 Roth
 
 held that “a governmental employee’s contractual or statutory right to continued employment [is] a property interest falling within the scope of the Fourteenth Amendment’s protection,” and noting that
 
 Goss v. Lopez,
 
 419 U.S. 565, 573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), held that “ ‘a state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for dismissal may demand the procedural protections of due process’ ”).
 

 In
 
 Carter
 
 — the second case on which the employees in the present case rely — the employees were nonprobationary school-board personnel who performed dual duties, including cafeteria work, custodial work, working as teachers’ aides, and driving school buses. Pursuant to the ruling of the United States Supreme Court in
 
 Garcia v. San Antonio Metropolitan Transit Authority,
 
 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), indicating that the employees were subject to the requirements of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-208, the school board reduced the employees’ weekly work hours to 40 in order to avoid paying them overtime compensation. The employees sought a judgment declaring that they were entitled to notice and a hearing be
 
 *1238
 
 fore their work hours were reduced. The trial court determined that the employees had a “property interest” only in a 40-hour week and not in overtime hours.
 

 Following the ruling in
 
 Ledbetter,
 
 which had been decided the previous year, this court reversed the trial court’s judgment, holding that the employees had a property interest in the “whole” of them employment. 532 So.2d at 1019. The court stated: “We read
 
 Ledbetter
 
 as including any reduction in regularly scheduled hours as a partial termination since these scheduled hours constituted the employee’s employment as a whole.”
 
 Id.
 

 In
 
 Green
 
 — the third case upon which the employees here rely — each employee worked in the school lunchroom and also worked as a custodian. The employees’ lunchroom duties required more than 20 hours per week; their custodial duties required less than 20 hours per week. The school board terminated their services as custodians, arguing that the employees “had two distinct jobs in the school and that because they worked less than 20 hours as custodians, their termination as custodians was not covered by the [FDA].” 689 So.2d at 839. The Alabama Supreme Court disagreed, stating that the school board’s interpretation “would defeat the purpose of the [FDA].”
 
 Id.
 
 The court held that the plain language of the FDA protected employees who worked 20 or more hours per week and that, irrespective of the distinct jobs the employees performed during the week, they were entitled to the due-process protections established by the FDA because they had a property interest in the “whole” of their employment.
 
 Id.
 

 As the foregoing discussion makes clear, a school board’s failure to provide its employees with notice and a hearing regarding the reduction of their working hours was analyzed as a denial of due process in
 
 Ledbetter, Carter,
 
 and
 
 Green.
 
 The threshold inquiry in any claim of denial of due process is whether the interest asserted rises to the level of a “property interest.”
 
 See Stephenson v. Lawrence County Bd. of Educ.,
 
 782 So.2d 192, 200 (Ala.2000). The employees in
 
 Ledbetter, Carter,
 
 and
 
 Green
 
 were entitled to the due-process protections of the FDA because the base contracts pursuant to which they had worked and gained nonprobation-ary status under the FDA gave them a “legitimate claim of entitlement” to, and, therefore, a “property interest” in, working and being paid for the number of hours that they had been working before the board reduced their hours.
 

 However, “a public employee whose duties are terminable at will has no property interest in continued employment,”
 
 Mountain v. Collins,
 
 430 So.2d 430, 433 (Ala.1983);
 
 see also Davis v. J.F. Drake State Tech. Coll.,
 
 854 So.2d 1151 (Ala.Civ.App.2002); and
 
 Gainous v. Tibbets,
 
 672 So.2d 800 (Ala.Civ.App.1995), and an employee “has no property rights in a position of temporary employment, where termination may occur at will,”
 
 Woods v. Milner,
 
 955 F.2d 436, 440 (6th Cir.1992). In
 
 Board of Regents v. Roth,
 
 408 U.S. at 577, 92 S.Ct. 2701, the United States Supreme Court explained:
 

 “To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.”
 

 
 *1239
 
 We cannot conclude that the employees in the present case could have had a valid expectation of, or have reasonably relied in their daily lives upon, continuing to receive 10 extra work hours a week and the pay those extra hours merited when they signed contracts that were specifically designated as “Temporary Work Contracts” that would “last only as long as the extra work time is needed by the school system.” Nor can we conclude that the employees could reasonably have relied upon being afforded a hearing as guaranteed by the FDA before their work hours were reduced when the “Temporary Work Contracts” expressly provided that their “extra hours are nontenurable” and that their “regular pay and tenure [were] based on [their] regular aide position[s].” In our judgment, the employees’ “Temporary Work Contracts” may have given them a “need or desire” for the extra hours and pay they received, but the contracts did not give them a “legitimate claim of entitlement” to the additional time and compensation.
 
 See Roth,
 
 408 U.S. at 577, 92 S.Ct. 2701.
 

 The employees argue that their “Temporary Work Contracts” are subject to the following rules: (1) that “the terms and provisions of the [Teacher Tenure] Act are to be read into all contracts entered into by school boards and teachers,”
 
 Haas v. Madison County Bd. of Educ.,
 
 380 So.2d 873, 875 (Ala.Civ.App.1980); (2) that “ordinary contract principles do not control when they conflict with the intent of the [teacher] tenure law,”
 
 Ex parte Wright,
 
 443 So.2d at 41; and (3) that “an attempted waiver of the protection afforded by teacher tenure laws is ineffectual on public policy grounds,”
 
 Ex parte Wright,
 
 443 So.2d at 42. Relying on the rules stated in
 
 Wright
 
 and
 
 Haas,
 
 the employees contend that their “Temporary Work Contracts” are ineffectual because the contract provisions are in conflict with the provisions of the FDA and represent an attempted waiver of the due-process protections guaranteed by the FDA.
 

 Initially, we point out that
 
 Wright
 
 and
 
 Haas,
 
 as well as
 
 Morgan v. Huntsville City Board of Education,
 
 510 So.2d 260, 261 (Ala.Civ.App.1987), another decision citing the rules stated in
 
 Wright
 
 in
 
 Haas,
 
 are cases applying the TTA — not the FDA — and the rules stated in those three cases have not even been applied to all cases alleging a violation of the TTA, much less to cases alleging a violation of the FDA. In
 
 Davis v. Russell,
 
 852 So.2d 774 (Ala.Civ.App.2002);
 
 Campbell v. Talladega City Board of Education,
 
 628 So.2d 842 (Ala.Civ.App.1993); and
 
 Bryan v. Alabama State Tenure Commission,
 
 472 So.2d 1052 (Ala.Civ.App.1985), Alabama appellate courts held that a teacher is not entitled to a TTA hearing upon the nonre-newal of his or her “supplemental contract” with respect to a position such as an athletic coach or a student-activity sponsor.
 

 Furthermore, although Alabama appellate courts have sometimes been receptive to construing the FDA
 
 in pari materia
 
 with the TTA,
 
 see Ledbetter,
 
 508 So.2d at 245, our courts have pointed out that such construction is not always appropriate,
 
 see, e.g., Ex parte Athens State Coll.,
 
 795 So.2d 709, 714 (Ala.2000) (stating that § 36-26-102, a part of the FDA, should not have been construed
 
 in pari materia
 
 with § 16-24-8, a part of the TTA, because “[t]enured teachers are afforded special protections. The ‘special’ consideration given tenured teachers is reflected in the Tenure Act’s purpose, which is ‘to promote stability in employment and to prevent a board from discharging a tenured teacher in
 
 *1240
 
 stead of a nontenured teacher.’ ” (quoting
 
 Ex parte Alabama State Tenure Comm’n,
 
 595 So.2d 479, 481 (Ala.1991))); and
 
 Ray v. Decatur City Bd. of Educ.,
 
 728 So.2d 680, 683 (Ala.Civ.App.1998)(stating that, “[u]n-like the Teacher Tenure Act, ... the FDA does not contain an automatic contract renewal provision”).
 

 Finally, even if the rules stated in
 
 Wright, Haas,
 
 and
 
 Morgan
 
 could, under other circumstances, be applicable to a case arising under the FDA — a question we expressly do not decide — they are not applicable here because the contracts at issue in those three cases were the contracts upon which the teachers had been working when they earned tenure. In
 
 Wright,
 
 the school board presented tenured teachers with new contracts purporting to reduce their term of employment, and accordingly them pay, from 10 months to 9 months. In
 
 Haas,
 
 the school board attempted, at the end of a principal’s third year of employment as a principal, to extend his probationary period another three years. In
 
 Morgan,
 
 the school board attempted to extend tenured teachers’ contracts from 196 days to 200 days without additional compensation.
 

 In the present case, the “Temporary Work Contracts” were clearly not the base contracts under which the employees had been working when they earned non-probationary status. Nor did the temporary contracts purport to cancel or nullify the contracts on which the employees had achieved nonprobationary status. The temporary contracts were, instead, “supplemental” to the employees’ base contracts. We hold that, if there is an analogy between the FDA and the TTA that can be applied to this case, it lies in the fact that neither act guarantees the right to a due-process hearing before the termination or partial termination of a “supplemental” contract for which the employee cannot earn tenure. We hold that the employees’ “Temporary Work Contracts” are analogous to teachers’ supplemental employment contracts.
 

 Although § 16-24-12, Ala.Code 1975, a part of the TTA, requires that notice of the nonrenewal of a teacher’s supplemental contract be timely — i.e.,' given “on or before the last day of the term of the school in which the teacher is employed,” when nonrenewal of the supplemental contract means that the teacher will not be “ ‘reemploy[ed] for the succeeding school year
 
 at the same salary,’ ” Boone v. Birmingham Bd. of Educ.,
 
 45 So.3d 757, 759 (Ala.Civ.App.2008) (quoting § 16-24-12) (emphasis added) — a teacher is not entitled to a hearing upon the nonrenewal of his or her supplemental contract,
 
 see Davis v. Russell,
 
 supra;
 
 Campbell v. Talladega City Bd. of Educ.,
 
 supra; and
 
 Bryan v. Alabama State Tenure Comm’n,
 
 supra. The employees in the present case make no argument that there was any defect with respect to the notice they received as to the cancellation of their “Temporary Work Contracts.”
 

 The Breach-of-Contract Claim
 

 The employees’ sole argument with respect to the breach-of-contract claim is that, based on
 
 Haas,
 
 the terms and provisions of the FDA are to be read into the “Temporary Work Contracts” they signed in 1997, thereby guaranteeing them a hearing before their work hours were reduced — an argument that we have previously discussed and rejected. Accordingly, we conclude that the judgment of the trial court is due to be affirmed.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 "1 The exact number of hours worked by each [employee] is documented in the records of the Board. Some weeks the employees may have worked less than 10 extra hours, but generally the employees worked 10 extra hours a week.”
 

 [1]
 

 . Section 36-26-100 provides that the FDA covers
 

 “all persons employed by county and city boards of education, two-year educational institutions under the control and auspices of the State Board of Education, the Alabama Institute for Deaf and Blind, including production workers at the Alabama Industries for the Blind, and educational and correctional institutions under the control and auspices of the Alabama Department of Youth Services, who are so employed by any of these employers as bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants, full-time instructors as defined by the State Board of Education, supervisors, and all other persons not otherwise certified by the State Board of Education.”