PER CURIAM.
The parties to this appeal, Mark D. Davis (“the father”), and Tonya D. Black-stock (“the mother”), have been before the appellate courts of this state on several previous occasions.
“The father and the mother married on November 11, 2000. Four months later, while they were residing in Tennessee, the father and the mother separated. The mother was pregnant with the [parties’] child at the time of the separation. Subsequently, a petition for divorce was filed in the Chancery Court for Lawrence County, Tennessee (‘the Tennessee trial court’). Before the Tennessee trial court ruled on the divorce petition filed with that court, the father and the mother moved to Alabama, *713 where the mother gave birth to the child on December 27, 2001.
“On February 15, 2002, the Tennessee trial court entered a judgment divorcing the father and the mother. In essence, the Tennessee judgment granted the father and the mother joint custody, with the mother receiving primary physical custody and child support. In June 2002, while the father, the mother, and the child continued to reside in Alabama, the father petitioned the Tennessee trial court for a modification of its February 15, 2002, judgment with regard to custody. On September 3, 2003, the Tennessee trial court modified its divorce judgment by granting the father equal physical custody on a four-day rotating basis and terminating the father’s child-support obligation.
“The mother appealed the September 3, 2003, judgment to the Tennessee Court of Appeals. On October 12, 2004, the Tennessee Court of Appeals issued an opinion and an order affirming that portion of the September 3, 2003, judgment that modified custody and vacating that portion of the judgment that modified the father’s child-support obligation. The Tennessee Court of Appeals remanded the case for a hearing to determine which parent should be the ‘primary residential parent’ and whether child support should be awarded. See Davis v. Davis, (No. M2003-02312-COA-R3-CV) (Tenn.Ct.App.2004) (not reported in S.W.3d). The Tennessee trial court never acted on this mandate.
“On February 6, 2006, the mother filed a petition for modification of custody and child support in the Lauderdale Circuit Court (‘the Alabama trial court’). In response, on February 23, 2006, the father filed a petition for a custody hearing in the Tennessee trial court. Both parties filed motions to dismiss the other’s petition on the ground of lack of subject-matter jurisdiction. The mother argued that the Tennessee trial court no longer had jurisdiction over the custody issue because the father, the mother, and the child had resided in Alabama for the preceding four years. The father argued that the Alabama trial court could not exercise jurisdiction because the Tennessee court was continuing to exercise its jurisdiction. The Alabama trial court granted the father’s motion to dismiss, but it set aside its dismissal order after the mother alleged that the Tennessee trial court had yielded jurisdiction to Alabama as a more convenient forum and had dismissed the father’s custody-hearing petition.
“The parties proceeded to a custody hearing in the Alabama trial court. At the hearing, the father requested that the mother be held in contempt for failing to abide by the Tennessee trial court’s September 3, 2003, judgment; he also requested that he be awarded primary physical custody of the child. The mother denied that she was in contempt and requested that she be awarded primary physical custody of the child. Following ore tenus proceedings, the Alabama trial court entered a judgment on - September 1, 2006. The Alabama trial court’s judgment maintained joint legal custody, but it awarded the mother primary physical custody of the child and awarded the father visitation. The Alabama trial court further ordered the father to pay child support and to pay one-half of the uninsured-medical expenses of the child. The judgment also provided the father a credit of $1,338.93 to be applied to his share of the child’s uninsured-medical expenses.”
Davis v. Blackstock, 47 So.3d 796, 797-98 (Ala.Civ.App.2007) (“Davis I”) (footnote omitted).
*714 In Davis I, supra, this court rejected the father’s arguments that the Lauderdale Circuit Court (hereinafter “the trial court”) had lacked subject-matter jurisdiction over the child:custody dispute, but this court reversed the trial court’s award of primary physical custody to the mother. The mother petitioned for a writ of certio-rari, and our supreme court granted the writ, holding that this court had erred in reversing the trial court’s custody award. Ex parte Blackstock, 47 So.3d 801 (Ala. 2009). In reaching its holding, our supreme court noted its agreement that the trial court had properly exercised subject-matter jurisdiction over the parties’ custody dispute. Ex parte Blackstock, 47 So.3d at 803 n. 1 (“The Court of Civil Appeals concluded that the [trial court’s] assumption of jurisdiction was consistent with the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act, Ala. Code 1975, § 30-3B-101 et seq. This conclusion appears to be correct.”).
On remand from Ex parte Blackstock, supra, this court affirmed the trial court’s award of primary physical custody to the mother and addressed the father’s challenge of the child-support award set forth in the September 1, 2006, judgment. Davis v. Blackstock, 47 So.3d 816 (Ala.Civ.App.2010) {“Davis II ”). This court agreed that the father’s child-support obligation had been improperly calculated, noting that the trial court had failed to include in its calculation the cost of health insurance for the child. Davis II, 47 So.3d at 817. Accordingly, this court reversed that portion of the trial court’s September 1, 2006, judgment pertaining to the amount of child support awarded and ordered that the father’s child-support obligation be recalculated. Id.
Davis II was released on April 2, 2010, and the certificate of judgment was issued on April 21, 2010. The matter appears to have been set for a status hearing in the trial court in September 2010, but the record does not indicate whether that hearing took place. This court explained the further procedural history of this matter as follows:
“On November 10, 2010, the father filed in the Alabama trial court a motion for a hearing and for modification of the 2006 judgment entered by the Alabama trial court. He argued that the 2006 judgment violated his constitutional rights, and he also alleged that a material change in circumstances had occurred since the entry of the 2006 judgment that justified a modification of custody. The father also requested that the Alabama trial court take steps necessary to protect the child from inappropriate conduct allegedly occurring at the mother’s house. After a hearing, the Alabama trial court entered a judgment on November 18, 2010, finding that the father was in arrears with regard to his child-support obligation in the amount of $14,246, plus $2,314.14 in accumulated interest. The Alabama trial court also set the father’s child-support obligation at $435 per month. The Alabama trial court finally noted:
“ ‘It further appears to the court that pursuant to the appellate decisions heretofore issued that there remains an issue regarding the imputation of health insurance cost in the calculation of child support pursuant to Rule 32[, Ala. R. Jud. Admin.,] that must be applied. The court hereby sets further hearing on this matter.... The court will hear argument in regard to said issue as well as any other pending motions.’
“On February 25, 2011, the father filed a motion to vacate ab initio the 2006 judgment. The father alleged that *715 the 2006 judgment was void for lack of subject-matter jurisdiction because of the mother’s noncompliance with various provisions of the Uniform Interstate Family Support Act (‘the UIFSA’), § 80-3A-101 et seq., Ala.Code 1975, and the Uniform Child Custody Jurisdiction and Enforcement Act (‘the UCCJEA’), § 30-8B-101 et seq., Aa.Code 1975_ The father’s motion to vacate was denied on March 4, 2011. The father filed a petition for a writ of mandamus with this court on March 8, 2011.”
Ex parte Davis, 82 So.3d 695, 699 (Ma.Civ. App.2011) (footnotes omitted).
In Ex parte Davis, supra, this court determined that no final judgment had been entered in this matter, and, therefore, that review of the issues raised by the father was appropriate pursuant to the petition for a writ of mandamus.[1] The father argued, among other things, that the trial court had not obtained subject-matter jurisdiction over the issue of child support when the mother initiated her 2006 action in the trial court because the mother had failed to register the judgments of the Chancery Court for Lawrence County, Tennessee (“the Tennessee court”), pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (“the UCCJEA”), § 30-3B-101 et seq., Ma.Code 1975, or the Uniform Interstate Family Support Act (“the UIFSA”), § 30-3A-101 et seq., Ma.Code 1975. This court rejected each of the father’s arguments on this issue.
This court also rejected other arguments asserted by the father that the trial court had lacked subject-matter jurisdiction under various provisions of the UCCJEA. In doing so, this court concluded that the provisions relied upon by the father were not applicable under the facts of this case. See Ex parte Davis, 82 So.3d at 701-03. Accordingly, this court denied the father’s petition for a writ of mandamus in Ex parte Davis, supra.
Thereafter, the mother moved the trial court to set a hearing to consider the matter. However, the father opposed that motion, stating that he intended to petition the United States Supreme Court for a writ of certiorari from the Supreme Court of Aabama’s decision in Ex parte Black-stock, supra. The father filed his petition in the United States Supreme Court, and the trial court held the matter in abeyance until after the United States Supreme Court denied the father’s petition for a writ of certiorari on October 4, 2010.
In June 2012, the father moved for a summary judgment. In that motion, the father again asserted his arguments that the trial court lacked subject-matter jurisdiction over the issue of child support. As is explained, infra, the father persists in reasserting those arguments again in this appeal.
*716 The trial court conducted an ore tenus hearing on the issue of child support on July 9, 2012. After the parties finished their initial oral arguments during the July 9, 2012, hearing, the father informed the trial court that he had, that same morning, filed a federal action, against the trial judge, the parties’ attorneys, and the mother.[2] The father offered no explanation of the federal action and the trial court made no inquiry about it. At the July 9, 2012, hearing, the father did not request that the trial judge recuse himself.
Also during the July 9, 2012, hearing, during a witness’s testimony, the father filed a motion seeking “to exclude mis-joined non-party”; in that motion, the father renewed an earlier objection he had made to prevent the State Department of Human Resources (“DHR”) from acting as a party in the child-support dispute still pending before the trial court.
On August 3, 2012, the trial court entered an order modifying the father’s child-support obligation to $460 per month and establishing his total child-support ar-rearage at $28,862.47, including interest. On August 7, 2012, the trial judge entered an order recusing himself from the action. A new trial judge was assigned to the action.
On August 31, 2012, the father purported to file a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P.[3] The trial court conducted a hearing on the father’s purported postjudgment motion. During that hearing, the father withdrew his pending claims seeking a modification of custody of the child. On November 9, 2012, the trial court entered a judgment confirming the August 3, 2012, child-support order, granting the father’s request that his remaining pending claims be withdrawn, and denying all remaining pending motions; the trial court noted that several of those pending motions had been implicitly denied in the August 3, 2012, order. The November 9, 2012, order disposed of the remaining pending claims and, therefore, constituted a final judgment. See Heaston v. Nabors, 889 So.2d 588, 590 (Ala.Civ.App.2004) (“A final judgment is one that disposes of all the claims and controversies between the parties.”).
The father had filed a notice of appeal on September 14, 2012. That notice of appeal was deemed held in abeyance until the entry of the November 9, 2012, final judgment. See Rule 4(a)(4), Ala. RApp. P. (“A notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after the entry and on the day thereof.”). Therefore, the father’s notice of appeal became effective on November 9, 2012, id., when the trial court entered the final judgment in this matter, and the appeal is timely. We note that this court granted the father’s motion to incorporate into the record on appeal in *717 this matter the records on appeal from the previous appeals in Davis I and Davis II and the materials submitted in support of, and in response to, the petition for a writ of mandamus addressed in Ex parte Davis, supra.
The father first argues on appeal that the trial court lacked subject-matter jurisdiction over the child-support issues because, he says, the mother failed to properly register the Tennessee court’s September 3, 2003, judgment under the UIFSA. The father is correct that a judgment that is void for want of subject-matter jurisdiction may be set aside at any time. McCarthy v. McCarthy, 785 So.2d 1138, 1140-41 (Ala.Civ.App.2000). However, this court addressed the arguments asserted in the father’s current brief on appeal when he asserted those same arguments in Ex parte Davis, supra. This court explained its rejection of the father’s arguments that the trial court had lacked subject-matter jurisdiction to rule on the issue of child support as follows:
“The father specifically argues that the mother failed to comply with the registration requirements of § 30-3A-602, Ala.Code 1975, a part of the UIF-SA, and § 30-3B-305, Ala.Code 1975, a part of the UCCJEA. Section 30-3A-602 of the UIFSA sets forth the procedure a litigant must follow in order to register a foreign child-support judgment. Only strict compliance with that registration procedure confers subject-matter jurisdiction upon an Alabama circuit court to enforce or to modify a foreign child-support judgment. See Mattes v. Mattes, 60 So.3d 887 (Ala.Civ. App.2010); and Ex parte Owens, 65 So.3d 953 (Ala.Civ.App.2010). The father notes that, when the mother filed her February 6, 2006, action seeking child support, she did not register the September 3, 2003, judgment of the Tennessee trial court with the Alabama trial court. The father overlooks a salient point, however. At the time the mother filed the 2006 action, the Tennessee trial court had not entered any child-support judgment. Although the Tennessee Court of Appeals had ordered the Tennessee trial court to consider awarding child support, the record indicates that the Tennessee trial court had not acted on that mandate and had not actually entered any judgment requiring either party to pay child support. Hence, the 2006 action cannot be construed as ■ a petition to enforce or to modify a foreign child-support judgment. Rather, it can only be considered a petition to establish child support under Alabama law. Accordingly, § 30-3A-602 does not apply, and the mother’s alleged failure to comply with that statute does not bar the Alabama trial court from assuming subject-matter jurisdiction as to the issue of child support.”
Ex parte Davis, 82 So.3d at 701 (emphasis added).
The father’s attempt to relitigate the issue of the trial court’s subject-matter jurisdiction to consider the child-support dispute is barred by the law-of-the-case doctrine. “Under the doctrine of the ‘law of the case,’ whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” Blumberg v. Touche Ross & Co.,. 514 So.2d 922, 924 (Ala.1987). The law-of-the-case doctrine is “designed to avoid repeated litigation over an issue that has already been decided.” Williams v. Williams, 91 So.3d 56, 62 (Ala.Civ.App. 2012).
The father does not contend that-the facts on which the decision in Ex parte *718 Davis, supra, was decided have changed. We note that the father argued before the trial court, but has not asserted here, that Williams v. Williams, supra, constituted a change in the law demonstrating that the trial court lacked subject-matter jurisdiction. Out of an abundance of caution, we note that the father was incorrect in that argument.
Williams v. Williams, supra, involved a 2009 proceeding concerning the modification of a 2006 child-support judgment that had, in turn, modified provisions of the parties’ foreign divorce judgment. In Williams, the mother, in the 2009 custody-modification action, challenged for the first time the trial court’s jurisdiction to enter the 2006 child-support judgment. The mother argued that the parties had not properly registered their 1998 foreign divorce judgment pursuant to the UIFSA and, therefore, had never properly invoked the jurisdiction of the trial court in seeking to modify that foreign judgment. The trial court agreed, and it dismissed the 2009 modification action and set aside the 2006 child-support judgment. The trial court determined that it had lacked subject-matter jurisdiction over the 2006 action because the parties’ foreign divorce judgment had not been properly registered in Alabama pursuant to the UIFSA.[4] Williams v. Williams, 91 So.Sd at 60. This court affirmed, concluding that because the father had not registered the 1998 foreign divorce judgment, which contained a provision pertaining to child support, as required by the UIFSA, the trial court had lacked subject-matter jurisdiction to enter its 2006 modification judgment. Williams v. Williams, 91 So.3d at 62.
In this case, as in Williams v. Williams, supra, one of the parties challenged the trial court’s subject-matter jurisdiction over the child-support dispute by arguing a failure to properly register a foreign judgment. However, in Williams v. Williams, supra, the courts agreed with the jurisdictional argument when it was first presented. This case is distinguishable because the jurisdictional argument the father makes in reliance on Williams v. Williams, supra, was rejected in earlier litigation addressing that same issue. When the father in this case made his jurisdictional challenge under the UIFSA, this court agreed with the trial court’s rejection of the father’s arguments. Ex parte Davis, supra. The father sought no further review of that decision, and it. constitutes a final decision on the merits of his arguments concerning the jurisdiction of the Alabama courts.
In Ex parte Montgomery, 97 So.3d 148 (Ala.Civ.App.2012), this court refused to consider a challenge to subject-matter jurisdiction that had been considered by this court and rejected in a previous appeal. This court held that because it had previously determined that the trial court had subject-matter jurisdiction over the parties’ dispute, the doctrine of law of the case prevented relitigation of the subject-matter-jurisdiction argument. Ex parte Montgomery, 97 So.3d at 155.
In this case, the trial court and this court have already considered and rejected the father’s subject-matter-jurisdiction challenge in Ex parte Davis, supra. Thus, *719 the issue of the trial court’s subject-matter jurisdiction over the child-support dispute in this action has been fully litigated and finally determined. The father is barred by the law-of-the-case doctrine from continuing to relitigate his jurisdictional challenges. Ex parte Montgomery, supra.
The father also argues on appeal that the trial court erred in permitting DHR to act as a party in this action. Although in his brief on appeal the father does not specifically address the trial court’s rulings on his arguments on this issue, we interpret the father’s argument as challenging the trial court’s denial of his motions opposing DHR’s status as a party in the action.
DHR did not file a formal motion to intervene in the action. However, on October 13, 2010, Robert F. Smith filed a limited notice of appearance as an assistant district attorney representing DHR on the issue of the establishment or enforcement of child support.[5]
On January 28, 2011, the father filed in the trial court an “objection” to DHR’s appearance in the action and to the participation of DHR in the action, either through the State or attorney general’s office or through the county district attorney’s office, pursuant to § 38-10-7.1, Ala. Code 1975. DHR filed an opposition to the father’s “objection.” On February 7, 2011, the trial court conducted a hearing for the sole purpose of receiving evidence pertaining to the cost of health insurance to be included in the parties’ child-support determinations. DHR’s attorney took an active role in that hearing, and the father did not object. Thereafter, on February 9, 2011, the trial court entered an order overruling the father’s objection to DHR’s participation in the action.
In early July 2012, Smith, DHR’s original counsel, moved to withdraw, and new counsel sought to be substituted on behalf of DHR. The trial court noted at the beginning of the July 9, 2012, ore tenus hearing that new counsel was representing DHR; the trial court formally granted the substitution of counsel .in a July 11, 2012, order. During the July 9, 2012, hearing, the father filed his “motion to exclude misjoined non-party,” in which he renewed his earlier objection to DHR’s presence in the action. The trial court summarily denied that motion during the July 9, 2012, hearing, stating that DHR was a party to the action and had been for some time. We note that, during the hearing on the father’s “postjudgment motion,” an attorney for DHR represented to the trial court that the mother had contacted DHR requesting assistance from DHR in enforcing the father’s child-support obligation; that statement is consistent with allegations made by the father in motions filed in the trial court regarding the mother’s contacting DHR for assistance on the child-support issue.
It is clear from the rulings of the trial court that it considered the “notice of limited appearance” filed by DHR to be a *720 motion to intervene and that the court implicitly granted that motion on February 9, 2011, by overruling the father’s January 28, 2011, objection to DHR’s participation in the action. See Sidwell v. Wooten, 473 So.2d 1036, 1037-38 (Ala.1985) (interpreting a “third-party complaint” as a motion to intervene that was granted by the trial court). DHR continued to take an active part in the litigation below pertaining to the issue of child support. In addition, during the July 9, 2012, ore tenus hearing, the trial court overruled the father’s renewal of his objection to DHR as a party by stating that DHR was a party and had been a party for some time. Accordingly, considering the totality of the record on appeal, we conclude that the trial court determined that DHR was a party through intervention in the proceedings below.
The father also argues on appeal that the trial court erred in allowing DHR to intervene. The father relies on Rule 24(a) and (c), Ala. R. Civ. P., governing intervention by right and the procedure by which a party may intervene in an action,[6] and caselaw addressing instances when a party has intervened by right under Rule 24(a), Ala. R. Civ. P.
In State ex rel. Tenner v. Tenner, 668 So.2d 838 (Ala.Civ.App.1995),, the trial court denied a motion filed by DHR to intervene in a child-support action. The only issue on appeal was whether DHR had a right to intervene pursuant to Rule 24(a)(2). This court determined that DHR had a “direct and substantial interest” in the action because it had paid the wife certain benefits in exchange for the assignment of the wife’s right to collect child support. 668 So.2d at 839. Accordingly, this court reversed the judgment of the trial court.
Similarly, in State ex rel. Wilson v. Wilson, 475 So.2d 194 (Ala.Civ.App.1985), this court held that the Department of Pensions and Securities (“DPS”), the predecessor to DHR, did not have an unconditional right to intervene in a child-support action under Rule 24(a)(1). However, the court noted that, in that case, because the State was paying support benefits to the mother for the children, the State had the right to intervene pursuant to Rulé 24(a)(2). The court then stated:
“This court has previously stated in a divorce case in which child support was an issue that ‘[tjhere appears no element for an intervention of right [by D.P.S.] under Rule 24(a).’ State v. Little, 389 So.2d 944, 946 (Ala.Civ.App.1980). This statement is dicta, however, as no motion to intervene was filed in Little. Moreover, in making this statement, this court did not intend that [D.P.S.] may never have a right to intervene under Rule 24(a) in a suit to enforce or collect child support payments. It clearly has *721 such a right to intervene in the present case.”
State ex rel. Wilson v. Wilson, 475 So.2d at 197. See also State ex rel. Tenner v. Tenner, supra.
The cases discussing DHR’s right to intervene in a child-support action involve various provisions of the Child Support Act of 1979 (“the CSA”), § 38-10-1 et seq., Ala.Code 1975. In each of the cases discussed above, the recipient parent had assigned her rights to collect child support to DHR in exchange for financial assistance from DHR. The father does not, in his brief submitted to this court, explicitly contend that DHR could not intervene under Rule 24(a)(2). However, the father does briefly allege that DHR does not have a direct or substantial interest in the action because, he says, the record does not indicate that DHR has paid financial assistance to the mother. The father contends that in the absence of evidence indicating that DHR has paid financial benefits to the mother, DHR does not have the right under the CSA to intervene in the action. We disagree.
Section 38-10-7(a) of the CSA explains when DHR may take action to enforce a parent’s child-support obligation:
“(a) Whenever anyone owing the obligation of support has failed to provide support, and application is made to [DHR] for support services as may be provided pursuant to the requirements of Title IV-D or for aid, [DHR], and including the district attorney when providing services for [DHR], may take appropriate action under this article, or any other appropriate state and federal statutes,[7] to assure that the responsible person or persons owing the obligation of support provide support, including, but not limited to, civil or criminal actions to determine parentage or to establish, modify, or enforce support obligations. All actions to determine parentage or to establish, modify, or enforce support obligations may be brought in either the juvenile court or district court or the circuit court or appropriate federal court, and all presently existing statutes are hereby amended to provide that the juvenile courts and district courts and the circuit courts shall have the concurrent jurisdiction of actions involving parentage, desertion, nonsupport, or support.”
(Emphasis added.)
Thus, § 38-10-7(a) provides that DHR may take action to enforce a parent’s child-support obligation when a recipient parent asks it for support services or when the recipient parent asks for financial aid. In this case, it is undisputed that the father has not complied with, prior support orders and has paid no child support, despite being required to do so by the November 18, 2010, pendente lite child-support order. According to the allegations of the father and the attorney for DHR, the mother requested child-support-enforcement services from DHR. ,
This court quoted with approval the following explanation of the manner in which DHR may assist a parent in enforcing a child-support obligation or in obtaining child support:
“ ‘Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq., provides for state plans for child support and sets forth the requirements of the state plan. The Alabama Child Support Act of 1979, § 38-10-1 et seq., Code of Alabama 1975, was enacted pursuant to the feder *722 al statute, and the Department of Human Resources was designated to operate child support programs as may be required under the provisions of Title IV-D.
“ ‘... [T]he Alabama legislature has explicitly adopted and incorporated the requirements of the Social Security Act into the Child Support Act of 1979. § 38-10-2(a)(8), Code of Alabama, 1975.
“ ‘Both the federal and state acts [provide] for automatic assignment of support rights to the state where an individual receives Aid to Dependent Children (ADC) or Aid to Families with Dependent Children (AFDC). 42 U.S.C. § 602(a)(26); 45 C.F.R. § 232.11-12; § 38-10-6, Code of Alabama 1975.
“ ‘The Social Security Act also requires that state plans shall provide that “child support collection or paternity determination services established under the plan shall be made available to any individual not otherwise eligible for such services upon application filed by such individual with the state, including support collection services for the spouse (or former spouse) with whom the absent parent’s child is living '... ” 42 U.S.C. § 654(6); C.F.R. § 302.33. As part of the application for non-ADC services, the state IV-D agency (DHR) “may take an assignment of support rights from an individual”, 45 C.F.R. § 302.33(e), although the assignment is not a condition of eligibility of services, and, the state, as of October 1, 1985, “may have in effect and use procedures for the payment of support through the state IV-D agency (DHR) or entity designated by the state to administer the states’ withholding system (DHR) (§ 38-10-3(b), Code of Alabama 1975) upon the request of either parent, regardless of whether or not arrearages exist or withholding procedures have been instituted.” 45 C.F.R. § 302.57(a).
“ ‘Accordingly, an assignment of support rights in non-ADC eases is permissible under Title IV-D, whether or not arrearages exist, upon application to the state IV-D agency (DHR) by either parent, and the same right is implicitly if not explicitly incorporated into the state act, pursuant to § 38-10-3(a) and (b), Code of Alabama, 1975, and that the Department of Human Resources is the proper collection agent when there has been an assignment of rights or application for Title IV-D services. § 38-10-3(b), Code of Alabama 1975, 45 C.F.R. § 302.57(a).’”
Blackston v. State ex rel. Blackston, 585 So.2d 58, 58-59 (Ala.Civ.App.1991) (quoting trial court’s order) (emphasis, except on “shall,” added).
Under § 38-10-7, there is no requirement that the recipient parent be receiving financial aid from DHR in order to avail herself or himself of that agency’s assistance in enforcing the child-support obligation of the other parent. The trial court has discretion in granting a motion to intervene under Rule 24(a). Black Warrior Riverkeeper, Inc. v. East Walker Cnty. Sewer Auth., 979 So.2d 69 (Ala.Civ. App.2007) (setting forth factors the trial court may consider in determining whether a party may intervene under Rule 24(a)).[8] Accordingly, • we cannot say that the father has demonstrated that the CSA did not provide DHR the right to intervene in the action in order to assist the mother in enforcing the child’s fundamental right to basic child support from the *723 father or that the trial court erred in allowing DHR to intervene in the action.
The father also briefly asserts a due-process argument concerning his position that DHR should not be allowed to intervene as a party to the action. The father did not raise that due-process argument before the trial court, and he may not assert that argument for the first time on appeal. Davis v. J.F. Drake State Tech. Coll., 854 So.2d 1151, 1157 (Ala.Civ.App.2002).
The father next argues that the trial court erred in determining his child-support obligation and arrearage and, accordingly, violated his due-process rights. The father’s due-process argument as to this issue is premised largely on his continued arguments pertaining to visitation and custody of the child and the trial court’s refusal to consider those issues at the July 9, 2012, hearing. The father has withdrawn his claims pertaining to those issues that were asserted as part of this action that has been pending since 2006. Therefore, any error the trial court might arguably have made in limiting the issues addressed during the July 9, 2012, hearing were harmless. Rule 45, Ala. R.App. P.
A great portion of the father’s arguments on the issue of child support is dedicated to his contention that the trial court demonstrated bias against him. On appeal, the father accuses the trial court of having ex parte communications with counsel for DHR or the mother. The father alleges that the trial court “had to have ex parte communications” pertaining to the calculation of his child-support obligation and arrearage. The father offers no evidence, just his own speculation, in support of that allegation. The father also alleges that the trial judge was biased against him, citing numerous rulings or comments made by the trial judge during earlier hearings in this matter as support for his allegations of bias.
The father refers this court to his July 16, 2012, motion to recuse, and he argues that the trial judge should have recused himself on the bases argued in his appellate brief submitted in this appeal. We note that, on August 7, 2012, the trial judge who initially presided over this action on remand from Davis II and after the issuance of our opinion in Ex parte Davis did recuse himself. The father’s arguments appear to be that the trial judge should have recused himself before entering the August 3, 2012, order.
However, the father’s July 16, 2012, motion to recuse, filed one week after the July 9, 2012, ore tenus hearing, does not mention the bases for recusal the father now asserts in his brief to this court. The arguments in that July 16, 2012, motion pertain solely to the father’s allegation that the trial judge had a conflict of interest and was probably biased because the father had initiated an action against the trial judge and others in federal court. The father fails to mention in his motion to recuse the adverse rulings made either during or before the July 9, 2012, hearing that he now contends demonstrate bias on the part of the trial judge, and he did not allege in that motion his allegation that there had been ex parte communications between the trial court and attorneys representing the mother’s interests. Thus, the arguments the father asserts in his brief to this court are impermissibly raised for the first time on appeal. Davis v. J.F. Drake State Tech. Coll., supra; see also Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”).
*724 The father briefly mentions in his appellate brief that the trial court entered its August 3, 2012, order on the merits of the child-support dispute on the same date the father alleges the trial judge received service of process of the federal action initiated against him and others by the father. There is no evidence in the record on appeal as to when the trial judge received notice of the action or as to whether receipt of the notice occurred before the entry of the August 3, 2012, judgment. Even assuming, as the father alleges in his brief to this court, that the trial judge was served with notice of the father’s federal action against him and others on the same date the trial court entered the August 3, 2012, order, there is no indication that that service was accomplished before the completion or entry of that order or that it in any way affected the trial court’s consideration of the child-support issue. A mere accusation of the possibility of bias is not sufficient to warrant the recusal of the trial judge. Tatum v. Carrell, 897 So.2d 313, 325 (Ala.Civ.App.2004). The father has failed to demonstrate error with regard to these arguments.
The father next challenges the determination of his child-support obligation. In Davis II, supra, this court explained that, in entering its September 1, 2006, judgment on the issue of child support,
“[t]he trial court attached a Form CS-42 Child-Support Guidelines statement, see Rule 32, Ala. R. Jud. Admin., to its Séptember 1, 2006, judgment. Based on the parties’ incomes, the trial court determined the basic child-support obligation to be $540. The trial court then added child-care costs of $364, resulting in a $904 total child-support obligation. The father’s percentage share of the parties’ income is 48.13%, and the mother’s percentage share is 51.87%. Therefore, the mother’s share of the $904 total child-support obligation is $469, and the father’s share is $435. It appears that the trial court inadvertently ordered the father to pay the amount of child support that, according to its calculations, the mother would have been obligated to pay had the father been awarded primary physical custody of the child. Thus, we conclude that the trial court’s award of child support is in error.”
Davis II, 47 So.3d at 817. This court then noted that, although the trial court had ordered the mother to provide health insurance for the child, the trial court had failed to include the cost of that health insurance in its child-support determination. Accordingly, this court reversed the judgment and remanded the case for the trial court “to recalculate the father’s child-support obligation in accordance with Rule 32 and this opinion.” Davis II, 47 So.3d at 817.
The opinion in Davis II was released on April 2, 2010, and this court’s certificate of judgment issued April 21, 2010. However, the trial court did not immediately rule on the pending child-support issue. Rather, on November 18, 2010, the trial court entered a pendente lite order complying in part with this court’s appellate mandate that it correct that part of its earlier, September 1, 2006, judgment to-reflect that the father was to pay the proper portion of the child-support amount reflected on the child-support forms incorporated into the September 1, 2006, judgment — i.e., $435 per month in child support. However, in that November 18, 2010, order, the trial court did not recalculate child support to include the cost of providing health insurance for the child; rather, it set the matter for a further hearing regarding the cost of health insurance. The trial court also established the father’s then current child-support arrearage, dating back to the September 1, 2006, judgment, based on its *725 determination that the father’s pendente lite child-support obligation was $435 per month. Following the entry of the November 18, 2010, order, the action was largely stayed pending the resolution of the father’s requests for appellate review to various courts.
During the July 9, 2012, hearing, the trial court received evidence concerning the parties’ then current incomes, the cost of health-insurance coverage, and the cost of child care at that time. The trial court also received evidence from DHR concerning the amount of the father’s child-support arrearage. In asserting a child-support arrearage, DHR agreed to calculate the father’s child-support arrearage based on a child-support amount of $435 per month, although DHR believed that the father’s monthly child support should be higher based on inclusion of the cost of health-insurance coverage for the child. See Davis II.
At the July 9, 2012, hearing, the mother testified that the father had paid no child support since the entry of the September 1, 2006, judgment. The father stated, however, that he had paid child support from September 2006 through May 2008. It is undisputed that the father has not contributed any child support for the child since at least May 2008. The mother presented evidence indicating that her sister and her mother assist her financially in providing for the child’s basic support needs. Tina Smith, the mother’s sister, testified that she has consistently provided the mother approximately $500 per month in financial assistance because the father has failed to pay monthly child support; Smith also alleged that the father had once told her that he would never pay the mother child support.
The father presented evidence indicating that he has provided some clothes for the child, that he has paid for a summer camp that the child has attended, and that he pays for the child’s school lunches. The father also testified that he is contributing to the payment for the child’s braces; we note that the September 1, 2006, judgment addressed the parties’ sharing of the cost of braces in a provision separate from that addressing the basic child-support determination. See Comment, Rule 32, Ala. R. Jud. Admin. (“In addition to the recommended child support obligation, the court may make additional awards for extraordinary medical, dental, and educational expenses if the court finds such awards to be in the child’s best interest or if the parents have agreed to such awards.”).
On appeal, the father has taken issue with some of the evidence submitted to the trial court during the July 9, 2012, hearing concerning the current cost of child care and the parties’ incomes. He contends that the trial court erred in purportedly relying on certain evidence in determining child support in its August 3, 2012, judgment. The father then points out in his brief on appeal that the trial court, in determining child support in its August 3, 2012, judgment, based its determination on the child-support guidelines that became effective on January 1, 2009, and, in doing so, utilized the parties’ 2011 or 2012 income levels and child-related costs. We hold that, in so doing, the trial court erred.
In Davis II, this court ordered that the child-support obligation set forth in the September 1, 2006, judgment be recalculated in compliance with that opinion. Specifically, the trial court was to correct its mistake of ordering the father to pay the amount of child support that should have been attributed to the mother. In addition, the trial court was to recalculate the child-support determination to include the cost of health-insurance coverage in that calculation.
*726 The mother had presented undisputed evidence at the August 28, 2006, hearing upon which the September 1, 2006, judgment was based that the cost of health-insurance coverage was $33.95 per week, or $147.12 per month.[9] Thus, when that cost of providing health insurance for the child is added to the parties’ 2006 combined child-support obligation pursuant to Rule 32, Ala. R. Jud. Admin., the parties’ combined support obligation increases to $1,051. See Davis II, 47 So.3d at 817 (noting that, without considering the cost of health-insurance coverage, the parties’ total combined child-support obligation under the September 1, 2006, judgment was $904); see also Fuller v. Fuller, 93 So.3d 961, 968-70 (Ala.Civ.App.2012) (discussing the inclusion of the cost of health-insurance coverage in a child-support determination). The child-support forms incorporated into the September 1, 2006, judgment indicate that, given the parties’ incomes, the father is responsible for 48.13% of the child’s total basic support needs. Davis II, 47 So.3d at 817.
The trial court has not yet entered a judgment establishing the father’s correct child-support obligation under the 2006 judgment in compliance with the instructions on remand set forth in Davis II, supra.
“ ‘The issues decided by an appellate court become the law of the case on remand to the trial court, and the trial court is not free to reconsider those issues.’ Ex parte S.T.S., 806 So.2d 336, 341 (Ala.2001) (citing Murphree v. Murphree, 600 So.2d 301 (Ala.Civ.App.1992)). Moreover, on remand, ‘ “the trial court’s duty is to comply with the appellate mandate ‘according to its true intent and meaning, as determined by the directions given by the reviewing court.’ ” ’ Ex parte Jones, 114, So.2d 607, 608 (Ala.Civ.App.2000) (quoting Walker v. Carolina Mills Lumber Co., 441 So.2d 980, 982 (Ala.Civ.App.1983), quoting in turn Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983)).”
Brown v. Brown, 20 So.3d 139, 141 (Ala. Civ.App.2009).
This matter has been pending for more than six years. We recognize the father’s right to litigate and dispute the legal rulings of the courts of this state. However, during the years. this matter has been pending, the father has contributed little, if any, child support for the child’s basic support needs.
A child has a fundamental right of support from his or her parents. State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ.App.1995). The child-support guidelines are designed to address the basic support needs of the child. See Caswell v. Caswell, 101 So.3d 769, 774 (Ala.Civ.App.2012); see also Comment, Rule 32, Ala. R. Jud. Admin, (explaining that the child-support guidelines are designed to prevent the child from being penalized by the dissolution of the marriage and to ensure that the child receives the same level of support as if the family had remained intact).
The father argued before the trial court, and he insists to this court, that the child’s financial needs are being met. The father is correct that the mother, with the assistance of her sister and mother, has provided for all the child’s basic necessities, including food, shelter, and the majority of her clothes and other essentials, that are a part of the child’s fundamental right *727 of support from both of her parents. See State ex rel. Shellhouse v. Bentley, supra.[10] The father argues that “the child is involved in extraordinary activities that the father pays for, school lunches, braces ..., etc., which is above the ordinary and necessary needs of the child.” We recognize that, in addition to providing basic housing, food, and clothing, most parents want and try to provide their children with nonessential benefits and experiences, such as extracurricular activities, summer camps, and braces. This court commends the noncustodial parent who, in addition to meeting the basic support needs of his or her child or children though the payment of regular child support, works with the custodial parent to supply the child with additional benefits. However, in the absence of a noncustodial parent’s contribution to his or her child’s basic support needs, the provision of only extra benefits indicates action on the part of the noncustodial parent designed to “allow the noncustodial parent to win favor in the eyes of the child by providing nonessential ‘extras,’ all while the custodial parent is potentially struggling to provide the child’s basic necessities, such as food, clothing, and shelter, in the absence of court-ordered child-support payments.” Caswell v. Caswell, 101 So.Bd at 776.
The trial court’s August B, 2012, judgment fails to correctly establish the father’s child-support obligation due under the September 1, 2006, judgment, as was required by Davis II. See City of Gadsden v. Johnson, 891 So.2d 903 (Ala.Civ.App. 2004) (reversing a judgment on remand because the trial court had considered additional evidence rather than entering a corrected judgment based on the evidence originally presented to it); and Ex parte Whisenant, 898 So.2d 761 (Ala.Civ.App. 2004) (the trial court erred by conducting additional proceedings after a remand that contained specific instructions to the trial court). Given the unique facts of this case and the length of time the child has been provided basic support by only one of her parents, we remand the cause for 60 days for the entry of a judgment in compliance with Davis II and this opinion: specifically, for the entry of a judgment properly determining the father’s child-support obligation based on the evidence previously presented to the trial court and reiterated in this opinion.
In seeking a child-support ar-rearage from the father, DHR presented evidence of the total arrearage based on the $435 child-support amount established in the November 18, 2010, order. DHR submitted into evidence at the July 9, 2012, hearing an exhibit (“Exhibit 1”) consisting of a computer-generated document detailing the amount of the father’s purported child-support arrearage as of July 9, 2012. Before the trial court, DHR indicated that it was willing to accept an ar-rearage calculated upon the $435 monthly child-support obligation. However, a parent, or DHR acting on behalf of a parent, *728 may not forgive, reduce, or waive a child-support arrearage; any attempt to do so is a nullity. Wilson v. Wilson, 793 So.2d 809, 810 (Ala.Civ.App.2001); Frasemer v. Frasemer, 578 So.2d 1346, 1348-49 (Ala.Civ.App.1991).
It is clear that, when the trial court on remand properly recalculates the father’s child-support obligation under the September 1, 2006, judgment in accordance with the mandate of this court in Davis II and in this opinion, that child-support obligation will change. The establishment of the father’s correct child-support obligation under the September 1, 2006, judgment will necessarily alter the figure upon which his child-support arrearage is calculated. Accordingly, we direct the trial court to recalculate the father’s child-support arrearage based on his corrected child-support obligation as established on remand.
We note that Exhibit 1 did not account for any amounts the father claimed to have paid for the benefit of the child and that, he asserted, should be credited against his child-support arrearage. The determination of such credits against a child-support arrearage is a matter to be determined by, and is within the discretion of, the trial court. Caswell v. Caswell, 101 So.3d at 773; King v. King, 620 So.2d 56, 57 (Ala.Civ.App.1993). The father presented evidence regarding the amounts by which he claims his arrearage should be offset. This opinion should not be interpreted as commenting on the validity of the father’s claims for a credit against his child-support arrearage. The trial court may consider, based on the evidence already presented to it, to what extent, if any, the father is entitled to a credit against the child-support arrearage for amounts he indicated he paid for the benefit of the child.
For reasons stated above, this cause is remanded to the trial court to enter a judgment in conformance with our mandate in Davis II and our instructions in this opinion. The trial court shall make due return to this court within 60 days of the release of this opinion.
REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
THOMAS, J., concurs in the result, without writing.
MOORE, J., recuses himself.

On Return to Remand

PER CURIAM.
On April 15, 2013, this court remanded this cause to the Lauderdale Circuit Court (“the trial court”) to determine the child-support obligation of Mark D. Davis (“the father”) in compliance with instructions in a previous opinion of this court reversing, in part, a 2006 judgment. See Davis v. Blackstock, 159 So.3d 708 (Ala.Civ.App. 2013) (“Davis III”). For a complete history of the disputes between these parties, see also Davis v. Blackstock, 47 So.3d 796 (Ala.Civ.App.2007) (“Davis I”) (reversing a judgment modifying a joint-custody arrangement to award to the mother primary physical custody of the parties’ child); Ex parte Blackstock, 47 So.3d 801 (Ala.2009) (reversing Davis I and remanding for consideration of the other issues raised in the father’s original appeal); Davis v. Blackstock, 47 So.3d 816 (Ala.Civ. App.2010) (“Davis II ”) (reversing the child-support award and remanding for a recalculation of that award); and Ex parte Davis, 82 So.3d 695 (Ala.Civ.App.2011) (denying the father’s petition for a writ of mandamus based on his arguments that the courts lacked jurisdiction over the action below).
*729 On April 19, 2013, the trial court entered a judgment on remand in which it corrected the determination of the father’s child-support obligation in the 2006 judgment and calculated the father’s child-support arrearage through the end of June 2012. The State Department of Human Resources (“DHR”), which was providing child-support-enforcement services on behalf of Tonya D. Blackstock (“the mother”) and which had intervened in the action below, see Davis III, 159 So.3d at 721, filed a postjudgment motion arguing that the trial court had erred in its calculations of the father’s child-support arrearage. On April 26, 2013, the trial court entered an amended judgment (hereinafter referred to as “the April 26, 2013, corrected judgment”) in which it slightly modified its calculation of the father’s child-support ar-rearage and its determination as to the accrual of interest on that arrearage. The father also filed a timely postjudgment motion, which the trial court denied.
On return to remand, this court entered an order allowing the parties to submit amended briefs to this court if they so desired, and the father and DHR each did so.
In his amended brief on return to remand, the father, appearing pro se, continues to reassert many of the arguments he made in his brief submitted to this court on original submission in Davis III, including his arguments that this court lacks subject-matter jurisdiction over this matter. This court has already addressed those arguments in its opinions in Davis III and Ex parte Davis.[1]
*730 In his amended brief on return to remand, the father also asserts several arguments pertaining to the trial court’s determination on remand of his corrected child-support obligation under the 2006 judgment. In its April 26, 2013, corrected judgment, the trial court stated:
“The father’s child-support obligation due under the September 1, 2006, judgment is determined to be $506 per month. This calculation is based on the evidence presented prior to the September 1, 2006, order. The mother’s gross monthly income was $2,048 and the father’s gross monthly income was $1,900. There was no evidence of preexisting child-support or periodic-alimony payments; therefore the monthly adjusted gross income was $3,948. The father’s percentage share of income was, therefore, 48.13%. The basic child-support obligation based on the then-existing guidelines was $540. Work-related child-care costs were $364 per month and health-insurance costs were $147.12 per month for a total child-support obligation of $1,051.12 per month. The father’s 48.13% of that obligation is $506.”
We note that, in asserting his arguments on return to remand, the father does not contend that the trial court failed to comply with this court’s remand instructions in Davis III or in Davis II. Rather, the father contends that this court’s “mandate” in Davis III pertaining to his child-support obligation was inequitable.
In his amended brief, the father contends that, because of a recent change in the law, any order requiring him to contribute to the payment of medical expenses or for health insurance for the child is unconstitutional. The father cites Article I, § 36.04, Ala. Const.1901 (Off. Récomp.), which was adopted in December 2012. Article I, § 36.04, prohibits any law or rule from requiring a person to participate in any health-care system.[2] That constitutional provision was adopted and ratified by the voters in Alabama as a countermeasure to the Patient Protection and Affordable Care Act of 2010, Pub.L. No. Ill— 148,124 Stat. 119 (2010).
In his amended brief, the father states that any payment he makes under an obligation imposed under the child-support guidelines of Rule 32, Ala. R. Jud. Admin., to contribute to the provision of health insurance for the child or to defray her medical expenses is equivalent to the state’s forcing him to participate in a health-care system in contravention of Article I, § 36.04. In support of that conten *731 tion, the father cites only inapplicable authority for the proposition that a parent has a fundamental right to direct his or her child’s upbringing and a case generally discussing the Equal Protection Clause of the United States Constitution. See City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); and Ex parte E.R.G., 73 So.3d 634 (Ala.2011). The father makes no attempt to apply the holdings of those cases to the facts of this case or to argue how the language of Article I, § 36.04, relates to the rules of statutory interpretation. The father also fails to assert that the purpose of Article I, § 36.04, was to remove from the determination of a child’s parents’ respective child-support obligations the cost of providing health insurance for the child.
It is not the function of the appellate courts to develop, research, and support an appellant’s arguments. Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007); Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003). The father’s argument in his amended brief that the requirement that a parent contribute to the health-insurance and medical costs of his or her child is unconstitutional is insufficient to warrant review by an appellate court. Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992). Accordingly, we will not address it.
The father also briefly asserts that the cost of health-insurance coverage should not be included in the determination of his child-support obligation under the 2006 judgment in the April 26, 2013, corrected judgment because the evidence indicated that the health-insurance premiums, at the time of the 2006 judgment, were deducted from the paycheck of the mother’s husband. The father alleges that the mother did not pay for that coverage and, therefore, that the cost of. the health insurance should not be included in determining child support. The remainder of the paragraph the father dedicates to that “argument” sets forth facts presented at the 2006 hearing on the merits pertaining to the payment for that health-insurance coverage. The father provides no citations to any caselaw that might support his argument, and he fails to develop his argument further, in contravention of Rule 28(a)(10), Ala. R.App. P. Therefore, in order to address the issue as framed by the father in his amended brief, this court would be required to develop the argument on behalf of the father and to research authority with which to support that argument, which this court will not do. Jimmy Day Plumbing & Heating, Inc. v. Smith, supra; Butler v. Town of Argo, supra.
Similarly, in a two-sentence “argument,” the father urges this court “to overrule the line of cases found in Fuller v. Fuller, 93 So.3d 961 (Ala.Civ.App.2012).” The father does not explain in his amended brief on what basis he believes Fuller v. Fuller and the cases it relies on should be reversed. That ease discusses, among other things, the inclusion of the total cost of a health-insurance premium in a child-support determination when the health-insurance policy provides coverage for persons other than the parties’ child. However, the father has made no argument with regard to that issue, and he has not related the holding in Fuller v. Fuller to his argument, discussed above, that he should not be required to contribute to the health-insurance coverage for his child if the premium for that coverage is deducted from the salary of the custodial parent’s spouse. The-father has failed to demonstrate that the trial court erred in including the cost of health insurance in the determination on remand of the father’s child-support obligation under the 2006 judgment.
*732 The father also argues that the trial court erred on remand in including $364 per month in child-care costs in its determination of his correct child-support obligation under the 2006 judgment. The trial court included that amount in its 2006 judgment, which the father appealed. With regard to the issue of child support in that appeal, the materials before this court demonstrate that the father argued only that the trial court erred by transposing his child-support obligation for that of the mother. See Davis II, 47 So.3d at 817 (“[T]he trial court inadvertently ordered the father to pay the amount of child support that, according to its calculations, the mother would have been obligated to pay had the father been awarded primary physical custody of the child.”).
In his appeal of the 2006 judgment, the father did not assert that the trial court erred in including the $364 in child-care costs in the determination of child support. Issues that could have been raised in the previous appeal (i.e., the amount of child-care costs included in the child-support determination) but were not raised are deemed waived. See Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”). Further, under the law-of-the-case doctrine, issues that could have been raised in the previous appeal may not be relitigated in a subsequent appeal. Scrushy v. Tucker, 70 So.3d 289, 303-04 (Ala.2011); Martin v. Cash Express, Inc., 60 So.3d 236, 251 (Ala.2010); see also Williams v. Williams, 91 So.3d 56, 62 (Ala.Civ.App.2012) (The law-of-the-case doctrine is “designed to avoid repeated litigation over an issue that has already been decided.”). Accordingly, the father’s failure to raise this argument in his appeal of the 2006 judgment precludes our consideration of that issue in this appeal.
Also with regard to the calculation on remand of his child-support obligation under the 2006 judgment, the father argues that the trial court erred in calculating the -interest due on his child-support arrearage.[3] The version of § 8-8-10, Ala. Code 1975, in effect in 2006 specified that interest on judgments be calculated at a rate of 12 percent. That statute was amended to provide that, effective September 1, 2011, the interest rate to accrue on judgments is to be 7.5 percent. In determining the amount of interest due on the father’s past-due child support, the trial court stated:
“This court heard testimony on July 9, 2012, concerning the father’s payment history. Through the end of June 2012, the father should have made 70 monthly child-support payments of $506 for a total of $35,420. He had paid only $7,504 for an arrearage as of the end of June 2012 of $27,916. Interest accumulated on the arrearage at the rate of 12% per annum for the period of Sep *733 tember 2006 to August 2011 and at the rate of 7.5% for the period of September 2011 to June 2012 for a total cumulative interest as of the end of June 2012 of $7,608.97. The father’s child-support obligation plus interest as of July 9, 2012, the last time this court heard testimony on this issue, is hereby determined to be $85,519.97.
“The court determines the father is due no credit for any amounts the father claimed to have paid for the benefit of the child such as for extraordinary activities, summer camps, school lunches, braces, etc.”
Thus, in calculating the interest due on' the father’s child-support arrearage dating back to the entry of the 2006 judgment, the trial court applied the 12 percent interest rate to all past-due child-support payments that had accrued before September 1, 2011. For those past-due child-support payments that accrued after September 1, 2011, i.e., the effective date of the new interest rate on judgments under § 8-8-10, the trial court applied the 7.5 percent interest rate.[4]
In his amended brief submitted to this court, the father contends that, because the April 26, 2013, corrected judgment was entered after the September 1, 2011, effective date of § 8-8-10, as amended, the 7.5 percent rate should apply to his entire child-support arrearage. However, as DHR points out, child-support obligations become money judgments on the date each payment is due, and they may be collected in the same manner that any other judgment may be collected. Ex parte State ex rel. Lamon, 702 So.2d 449, 451 (Ala.1997); Walker v. Walker, 828 So.2d 943, 944 (Ala.Civ.App.2002). “ ‘[Accrued child support payments become final judgments as of the date due and may be collected as other judgments, ... such judgments would bear interest from due date.’ ” State ex rel. State Dep’t of Human Res. v. Orr, 635 So.2d 1, 3 (Ala.Civ.App.1994) (quoting Argo v. Argo, 467 So.2d 258, 259 (Ala.Civ.App.1985)) (emphasis added). Thus, each of the father’s unpaid child-support obligations became enforceable judgments on their due dates, and interest accrued at the statutory interest rate applicable to each of the separate past-due payments. The father has failed to demonstrate that the trial court erred in calculating the interest due on his child-support arrearage.
Given the foregoing, we hold that the father has failed to demonstrate that the trial court erred on remand in calculating the father’s corrected child-support obligation under the 2006 judgment or in determining the father’s child-support ar-rearage. Accordingly, because the father’s child-support obligation under the 2006 judgment has been properly determined, this court turns to the father’s arguments, asserted in his brief on original submis *734 sion, that the modification of his child-support obligation was erroneous.
In its August 3, 2012, judgment in the 2010 modification action filed by the father, see Ex parte Davis, 82 So.3d at 699; Davis III, 159 So.3d at 716, the trial court determined the father’s child-support obligation to be $460 per month. Thus, the trial court’s August 3, 2012, determination of the father’s child-support obligation actually lowered the father’s child-support obligation from $506 under the 2006 judgment (as determined by the April 26, 2013, corrected judgment) to $460. In general, when a judgment is wholly in a party’s favor, that party may not appeal. Ex parte Jefferson Cnty. Sheriff’s Dep’t, 13 So.3d 993, 996 (Ala.Civ.App.2009); see also Huntsville City Bd. of Educ. v. Sharp, 137 So.3d 917, 923 (Ala.Civ.App.2013) (“Typically, a party may not take an appeal from a decision that is wholly favorable to him.”). In this case, in his original brief pertaining to the August 3, 2012, determination of his modified child-support obligation, the father argued, however, that his child-support obligation was computed in error and that his obligation should be a lesser amount. Therefore, for the purposes of resolving this appeal, we assume that the August 3, 2012, judgment on the issue of child support was not one wholly in favor of the father.
The August 3, 2012, judgment did not explicitly incorporate child-support-guidelines forms as required by Rule 32(E), Ala. R. Jud. Admin. However, it is clear that in reaching that child-support determination the trial court relied on an exhibit designated as “Plaintiffs 2” that reached that child-support determination, and we deem that exhibit as being incorporated into the judgment for the purpose of Rule 32(E). The trial court included $230 per month in work-related child-care costs and $130 for the cost of health insurance in its calculation of the parties’ respective child-support obligations in reaching its August 3, 2012, judgment.
In his argument pertaining to the August 3, 2012, judgment, the father primarily raises substantive issues about whether he should be required to pay child support pursuant to Rule 32, Ala. R. Jud. Admin., and, as stated, this court has already addressed most of those issues.[5] The father next makes some general statements concerning the calculation of his child-support obligation. Out of an abundance of caution, this court has attempted to interpret and clarify those statements to discern the father’s arguments.
The father maintains that the mother places the child in after-school care as a method of “thwarting” his relationship with the child. The father has argued that he could keep the child after school each day instead. The father appears to be arguing that the cost of work-related child care should not be included in the calculation of his child-support obligation because he has offered to eliminate the necessity for that cost. The father has not cited any authority in an attempt to develop that argument. Further, the father’s request to have the child every day after school is not an issue pertaining to child support but is instead related to custody and visitation. The father waived his claims for a modification of custody or visitation in this action, and, therefore, the trial court did not enter a ruling on those claims.
*735 The father also takes issue with the trial court’s inclusion in its child-support determination in the August 3, 2012, judgment of $230 in child-care costs. Without citing any authority, in contravention of Rule 28, Ala. R.App. P., the father says that the DHR employee who testified on the issue of child support could not verify that the $230 per month complied with the limits on child-care costs set forth in the child-support guidelines. See Rule 32(B)(8), Ala. R. Jud. Admin. (“Child-care costs shall not exceed the amount required to provide care from a licensed source for the children, based on a schedule of guidelines developed by the Alabama Department of Human Resources.”). The DHR employee testified, however, that she believed that the child-care costs were correctly determined, although she was not the person who had calculated the amount DHR contended the father owed in child support.
The father states in his brief that a “correct calculation” of his child support is $335 per month. He cites to no portion of the record on appeal in which he submitted a calculation of child support to the trial court containing the figures he advances in his brief on appeal. Also, in making that argument, the father uses $150 as the figure he contends is the proper amount of work-related child-care expenses to be used in the calculation of his child-support obligation. The father provides no explanation of how he arrived at that figure. The father does cite exhibits he submitted pertaining to DHR’s limits on work-related child-care costs; those exhibits were first submitted at the November 8, 2012, hearing on the father’s August 31, 2012, post-judgment motion. The father fails to explain which of DHR’s rates he contends would be applicable under the facts of this case. Further, it is not clear from the record on appeal that the father made this argument to the trial court. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (an appellate court cannot consider issues presented for the first time on appeal). Given the argument asserted in the father’s brief on appeal, we cannot say that the father, who had the burden of demonstrating error on appeal, met that burden and showed that the trial court erred in determining his child-support obligation. Pavilion Dev., L.L.C. v. JBJ P’ship, 979 So.2d 24, 39 (Ala.2007); Coastal Realty & Mortg., Inc. v. First Alabama Bank, N.A., 424 So.2d 1315, 1317 (Ala.Civ.App.1982).
The father has failed to demonstrate error on appeal, and the August 3, 2012, judgment and the April 26, 2013, corrected judgment are therefore affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
THOMAS, J., concurs in the result, ' without writing.
MOORE, J., recuses himself.

. The November 18, 2010, order set the father's pendente lite child-support obligation at $435 per month, but, in entering that order, the trial court did not include in its calculation of child support the cost of health-insurance coverage to which the mother had testified in the 2006 hearing. Rather, the trial court set the matter for a later hearing to determine an amount of child support that would include consideration of the cost of health insurance. The father had also filed the November 10, 2010, petition seeking, among other things, to change custody to joint physical and legal custody. The trial court and this court treated the November 10, 2010, petition, under the specific facts of this case, to be part of the action that remained pending in the trial court. See Ex parte Davis, 82 So.3d at 699 n. 1. Accordingly, because issues remained pending before the trial court, the November 18, 2010, order was not final and could not support an appeal. McConico v. Carroll, 891 So.2d 328, 330 (Ala. Civ.App.2004).

. The record indicates that, on the same date as the scheduled ore tenus hearing, the father filed in the United States District Court for the Northern District of Alabama a complaint against the trial judge and 12 other Alabama officials alleging claims that those officials had violated his civil rights in connection with this ongoing litigation. The father named Judge Terry A. Moore of this court as one of the defendants in that federal civil-rights action. Judge Moore has recused himself from considering this appeal.

. A valid postjudgment motion may be taken only from a final judgment. SCI Alabama Funeral Servs., Inc. v. Hester, 984 So.2d 1207, 1208 n. 1 (Ala.Civ.App.2007). In an earlier opinion, this court noted that the father had amended his complaint to seek a modification of custody of the child and that, despite the father’s efforts, that claim had not been assigned a separate case number. Ex parte Davis, 82 So.3d at 699 n. 1. Thus, the August 3, 2012, order was not a final judgment that disposed of all the parties’ claims.

. The court in that case also specifically noted that the facts of that case are distinguishable from those of Ex parte Davis, supra, thus indicating that Williams v. Williams was decided on its own facts and did not constitute any change in the law. 91 So.3d at 60 n. 3 (“Hence, this was not a case in which a foreign jurisdiction had failed to address child support so that no registration of the previously entered foreign judgment would have been required. See Ex parte Davis, 82 So.3d 695, 701 (Ala.Civ.App.2011).”).

. That notice of appearance stated:
“COMES NOW the State of Alabama, by and through Robert F. Smith, Assistant District Attorney for the 11th Judicial Circuit, and appears in this cause for a limited purpose and hereby gives notice that the Lauderdale County District Attorney’s Office is authorized to exclusively represent the State of Alabama, Department of Human Resources pursuant to the provisions of Title IV-D of the Social Security Act regarding establishment or enforcement of child support, spousal support, medical support, and/or any other support services. The District Attorney's Office is not authorized to represent or accept service on behalf of the [mother] with regard to any issues concerning visitation, custody or other issues not pertaining to child support pursuant to Code of Ala. § 38-10-7.1.”

. Rule 24, Ala. R. Civ. P., provides, in pertinent part:
"(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.
“(c) Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5[, Ala. R. Civ. P.]. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene.”

. We reject the father's argument that the CSA limits DHR to initiating actions in its own name rather than allowing it to intervene or take other action as necessary to ensure the collection of child support from parents.

. The father has failed to assert any argument pertaining to those factors in his brief submitted to this court, and, therefore, such arguments are waived. Ex parte Riley, 464 So.2d 92, 94 (Ala. 1985).

. $33.95 x 52 weeks per year, divided by 12 months per year, results in a monthly health-insurance-coverage cost of $147.12.

. In his brief on appeal, the father argues that the mother misrepresented her income by failing to include in her statement of income the amounts her sister and mother have given her; he claims those amounts are "gifts” to be included in the determination of a parent’s gross income under the Rule 32, Ala. R. Jud. Admin., child-support guidelines. We note that the undisputed testimony of Tina Smith, the mother's sister, was that she had assisted the mother because the father had failed to pay child support. We make no determination in this appeal as to whether the amounts contributed to a custodial parent by others to offset financial needs created when the noncustodial parent fails to pay child support should be included in a parent’s gross income or as to whether those amounts should be included in the determination of the gross income of the noncustodial parent as amounts paid on behalf of that parent or gifted to that noncustodial parent.

. The father asserts one argument purportedly concerning jurisdiction that he had not asserted on original submission. Assuming, out of an abundance of caution but without so deciding, that the father may raise the issue, we conclude that the father's argument lacks merit. The father contends that the 2006 custody dispute was rendered "moot" because, in the fall of 2007, he moved from Decatur to Florence to be closer to the child; he also asserts that our supreme court's 2009 decision in Ex parte Blackstock was based on “speculation” that he would not relocate. The father explains those arguments by alleging that the supreme court's decision in Ex parte Blackstock affirming the trial court's custody modification was based on the mother’s speculation that the# father would not move to Florence to be closer to the child so that the previously ordered joint physical and legal custody would be sustainable. The father states that he did, in fact, move to Florence in the fall of 2007. The father appears to argue that his relocation to be closer to the child meant that the previous joint-custody arrangement was then workable and, therefore, that there was no basis for the 2006 custody-modification judgment. Our supreme court’s opinion in Ex parte Blackstock determined that the trial court properly modified custody to award the mother primary physical custody for a number of reasons. As only one of those reasons, the supreme court noted that the father had repeatedly promised to' relocate to be closer to the child but had consistently failed to do so. The court stated:
"Also, in regard to the father's moving to Florence, there was testimony that the father committed to move in 2004 and again in 2005 and that he committed to begin moving his business to Florence as well; the testimony would support the conclusion that the father could easily have moved his photography business to Florence. The father’s most recent commitment was that he would move to Florence in the summer of 2006. It is undisputed, however, that the father did not follow through on his commitments to relocate to Florence. Instead, he threatened the mother that he would attempt to obtain primary physical custody instead of moving, even before the mother filed her petition in the Lauderdale Circuit Court seeking primary physical custody. Based on the tenor of the testimony concerning the father's commitments to move, other testimony, and the fact that the father filed a counterpetition seeking sole custody of the child shortly before the final hearing in the present case, the circuit court could have concluded that the father had no intention of moving or that he had failed to act in good faith regarding moving and *730 that, in that regard, he had placed his own self-interest above the child’s best interest.”
Ex parte Blackstock, 47 So.3d at 812-13.
In reading Ex parte Blackstock in its entirety, it is clear that the father’s failure to comply with repeated promises to relocate was only a part of the basis of the supreme court's determination that the trial court properly modified custody of the child. Further, the father's relocation to Florence after the entry of the 2006 judgment cannot be said to have rendered moot the 2006 custody dispute resolved in that judgment.

. The text of Art. I, § 36.04, Ala. Const.1901 (Off. Recomp.), provides:
"(a) In order to preserve the freedom of all residents of Alabama to provide for their own health care, a law or rule shall not compel, directly or indirectly, any person, employer, or health care provider to participate in any health care system.
"(b) A person or employer may pay directly for health care services and shall not be required to pay penalties or fines for paying directly for lawful health care services. A health care provider may accept direct payment for lawful health care services and shall not be required to pay penalties or fines for accepting direct payment from a person or employer for lawful health care services.
"(c) The purchase or sale of health insurance in private health care systems shall not be prohibited by law or rule.”

. The father also argues that the trial court erred in allowing "the mother,” actually DHR, to submit a proposed calculation of the father’s child-support arrearage with the interest due on that arrearage. DHR submitted to the trial court a computer spreadsheet detailing the months in which the father had failed to pay child support and the interest due on those amounts. The only error pertaining to the calculation of the child-support arrearage that the father alleges is in the determination of interest, and this court addresses that argument in the body of this opinion. The father also maintains, however, that the submission by DHR of its calculation of the father’s arrearage amounted to the trial court’s verbatim adoption of factual findings made by DHR. Even assuming that to be true, however, the appellate courts have approved the practice of allowing a party to draft an order or judgment for the trial court to consider and adopt in part or in its entirety. See, e.g., Stollenwerck v. Talladega Cnty. Bd. of Educ., 420 So.2d 21, 24 (Ala.1982); Boothe v. Jim Walter Res., Inc., 660 So.2d 604 (Ala.Civ.App.1995).

. The father also contends that the trial court failed to apply simple interest to the child-support arrearage judgment. The father refers to DHR’s exhibit listing the “cumulative interest” on the father’s child-support arrear-age, and he equates the term “cumulative interest” with "compound interest.” In his amended brief after remand, the father fails to demonstrate that the "cumulative interest" that continued to accrue on each past-due installment of child support was not an accrual over tíme of simple interest on each of those past-due payments and that that interest was instead an award of compound interest. See State ex rel. State Dep’t of Human Res. v. Orr, 635 So.2d 1, 3 (Ala.Civ.App.1994) (interest accrues as of the due date of each past-due child-support payment); see also Walnut Equip. Leasing Co. v. Graham, 532 So.2d 655, 655 (Ala.Civ.App.1988) ("A party who complains of error by the trial court must affirmatively show from the record on appeal that such error was in fact committed.”).

. This court addressed the main part of the argument asserted by the father on the issue of child support in the issue of recusal in Davis III, 159 So.3d at 714. The father also argued that the interest on his child-support arrearage had been improperly calculated, an issue this court has already analyzed in this opinion.